No.  20 Civ. 4152 (AKH) (GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACHMAT AKKAD,

Plaintiff,

-against-

THE CITY OF NEW YORK, and FORMER
COMMISSIONER LOREE SUTTON, in her individual
capacity,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-125*
*New York, New York  10007*

*Of Counsel: J. Kevin Shaffer*
*Tel.:  (212) 356-1105*
*Matter No.:  2020-022044*

Danielle Dandrige,
J. Kevin Shaffer,
   Of Counsel.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................. 1

ARGUMENT .................................................................................................. 7

      POINT I ................................................................................................. 7

      PLAINTIFF'S CLAIMS PURSUANT TO THE CHRL
      AND 42 U.S.C. § 1983 ARISING PRIOR TO MAY 31,
      2017, ARE BARRED BY APPLICABLE STATUTES OF
      LIMITATION ........................................................................................ 7

      POINT II ............................................................................................... 8

      PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM
      OF DISCRIMIATION ON THE BASIS OF HIS,
      RELIGION, DISABILITY, OR MILITARY SERVICE ...................... 8

            A.   Motion to Dismiss Standard ................................................. 8

            B.   Plaintiff Fails to State a Plausible Disability or
                Religious Discrimination Claim .......................................... 9

            C.   Plaintiff Fails to State a Plausible Military
                Service Discrimination Claim Under USERRA.............................. 14

      POINT III................................................................................................ 18

      PLAINTIFF FAILS TO STATE A PLAUSIBLE FREE SPEECH
      RETALIATION CLAIM ...................................................................... 18

CONCLUSION.............................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

<u>Federal Cases</u>

*Allen v. Antal*,
    665 F. App'x 9 (2d Cir. 2016) ................................................................................18

*Anderson v. Davis Polk & Wardwell, LLP*,
    850 F. Supp. 2d 392 (S.D.N.Y. 2012) ..................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................8, 9

*Bermudez v. City of New York*,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011) ..............................................................13, 14

*Brown v. City of New York*,
    622 F. App'x 19 (2d Cir. 2015) ............................................................................21

*Carroll v. Delaware Riv. Port Auth.*,
    89 F. Supp. 3d 628 (D.N.J. 2015) ........................................................................15

*Carter v. Inc. Village of Ocean Beach*,
    693 F. Supp. 2d 203 (E.D.N.Y. 2010) .................................................................18

*Davis v. New York City Dept. of Corr.*,
    17 Civ. 3863 (MKB), 2017 U.S. Dist. LEXIS 193578
    (E.D.N.Y. Nov. 22, 2017) .....................................................................................17

*Dotson v. Farrugia*,
    11 Civ. 1126 (PAE), 2012 U.S. Dist. LEXIS 41195 (S.D.N.Y. Mar. 26, 2012) ....................18

*Elgalad v. New York City Dept. of Educ.*,
    17 Civ. 4894 (VSB), 2018 U.S. Dist. LEXIS 162838 (S.D.N.Y. Sep. 24, 2018) ....................13

*Fitzgerald v. Barnstable Sch. Comm.*
    555 U.S. 246 (2009) .............................................................................................21

*Fleurentin v. New York City Health & Hosps. Corp.*
    18 Civ. 5004 (AMD) (RLM), 2020 U.S. Dist. LEXIS 908
    (E.D.N.Y. Jan. 3, 2020) .......................................................................................17

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*,
    280 F.3d 98 (2d Cir. 2001)......................................................................................18

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)...............................................................................................18

*Henry v. Wyeth Pharms., Inc.*,
    616 F.3d 134 (2d Cir. 2010)....................................................................................10

*Hernandez v. City of New York*,
    18 Civ. 5870 (ER), 2019 U.S. Dist. LEXIS 96187 (S.D.N.Y. Jun. 7, 2019)...........13

*Hunt v. Klein*,
    476 F. App'x 889 (2d Cir. 2012)............................................................................14

*Hunt v. Klein*,
    10 Civ. 2778 (GBD), 2011 U.S. Dist. LEXIS 14918 (S.D.N.Y. Feb. 10, 2011),
    *aff'd* 476 F. App'x 889 (2012))..............................................................................17

*Ingram v. Nassau Health Care Corp.*,
    17 Civ. 5556 (JMA) (SIL), 2020 U.S. Dist. LEXIS 26070
    (E.D.N.Y. Feb. 13, 2020).................................................................................12, 20

*Jackler v. Byrne*,
    658 F.3d 225 (2d Cir. 2011)....................................................................................18

*Jeune v. Crew*,
    16 Civ. 2437 (MKB), 2017 U.S. Dist. LEXIS 161739
    (E.D.N.Y. Sept. 29, 2017).......................................................................................19

*Lane v. Franks*,
    573 U.S. 228 (2014)...............................................................................................19

*Lentz v. DOI*,
    2015 MSPB LEXIS 3586 (M.S.P.B. April 27, 2015)...............................................15

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015)....................................................................................21

*Los Angeles County v. Humphries*,
    562 U.S. 29 (2010)..................................................................................................21

*Lucio v. New York City Dept. of Educ.*,
    575 F. App'x 3 (2d Cir. 2014).................................................................................16

*Luka v. Bard Coll.*,
    263 F. Supp. 3d 478 (S.D.N.Y. 2017).....................................................................10

*Martin v. City Univ. of New York*,
   17 Civ. 6791 (KPF), 2018 U.S. Dist. LEXIS 208685 (S.D.N.Y. Dec. 11, 2018)...................11

*Marquez v. Starrett City Assoc.*
   406 F. Supp. 3d 197, 207 (E.D.N.Y. 2017) ...............................................................13

*Marquez v. United States Postal Serv.*
   2009 MSPB LEXIS 602 (M.S.P.B. January 9, 2009)..............................................15

*Mauro v. New York City Dept. of Educ.*,
   2020 U.S. Dist. LEXIS 76379 (S.D.N.Y. Apr. 29, 2020).......................................12

*McAllister v. United States Postal Serv.*,
   2020 MSPB LEXIS 2606 (M.S.P.B. June 25, 2020).............................................15

*Mesias v. Cravath, Swaine & Moore LLP*,
   106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015)..............................................................11

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973).............................................................................................8, 9

*Monell v. New York City Dept. of Soc. Servs.*,
   436 U.S. 658 (1978)...........................................................................................2, 21

*Moore v. Verizon*,
   13 Civ. 6467 (RJS), 2016 U.S. Dist. LEXIS 16201 (S.D.N.Y. Feb. 5, 2016) ........11

*Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist.*,
   637 F. App'x 16 (2d Cir. 2016) ..............................................................................20

*Nachmany v. FXCM, Inc.*,
   16 Civ. 225 (DAB), 2020 U.S. Dist. LEXIS 7161 (S.D.N.Y. Jan. 9, 2020)............17

*NLRB v. Transportation Management*,
   462 U.S. 393 (1983)...............................................................................................14

*Odermatt v. New York City Dept. of Educ.*,
   694 F. App'x 842 (2d Cir. 2017) .............................................................................18

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007)......................................................................................9

*Patterson v. County of Oneida*,
   375 F.3d 206 (2d Cir. 2004)....................................................................................21

*Ray v. Dep't of Veterans Affairs*,
   1999 MSPB LEXIS 1394 (M.S.P.B. October 15, 1999) .........................................15

*Serricchio v. Wachovia Sec. LLC*,
    658 F.3d 169 (2d Cir. 2011)................................................................................14

*Sheehan v. Dept. of the Navy*,
    240 F.3d 1009 (Fed. Cir. 2001)......................................................................14, 15

*Solomon v. De Blasio*,
    18 Civ. 5 (MKB) (CLP), 2018 U.S. Dist. LEXIS 213929
    (E.D.N.Y. Dec. 18, 2018) ................................................................................19

*Soules v. Connecticut*,
    14 Civ. 1045 (VLB), 2015 U.S. Dist. LEXIS 131985 (D. Conn. Sep. 30,2015),
    *aff'd in part* 669 F. App'x 54, 55 (2d Cir. 2016)) ..................................................15

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)..................................................................................7

*Williams v. City of New York*,
    11 Civ. 9679 (CM), 2012 U.S. Dist. LEXIS 112482 (S.D.N.Y. Aug. 8, 2012) .....................21

State Cases

*Askin v. Dept. of Educ. of the City of New York*,
    110 A.D.3d 621 (1st Dep't 2013) ...........................................................................9

*Chin v. N.Y.C. Hous. Auth.*,
    106 A.D.3d 443 (1st Dep't 2013) ...........................................................................9

*Massaro v. Dept. of Educ. of the City of New York*,
    121 A.D.3d 569 (1st Dep't 2014) ..........................................................................12

*Thomas v. Mintz*,
    182 A.D.3d 490 (1st Dep't 2020) ...................................................................9, 10, 12

**Statutes**

42 U.S.C. § 1983 ................................................................................... *passim*

Administrative Code of the City of New York §§ 8-101, *et seq.* .......................... *passim*

United States Employment and Reemployment Act, 38 U.S.C. § 4301 *et seq.,* .................. *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x

ACHMAT AKKAD,

           Plaintiff,     20 Civ. 4152 (AKH) (GWG)

    -against-

THE CITY OF NEW YORK, and FORMER
COMMISSIONER LOREE SUTTON, in her
individual capacity,

           Defendants.
----------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

    Achmat Akkad ("Plaintiff"), a former Community Coordinator at the New York City Department of Veterans' Services ("DVS"), brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983"), the First Amendment to the U.S. Constitution, and Article I, Section 8 of the New York State Constitution, the Uniformed Services Employment and Reemployment Act ("USERRA"), and the New York City Human Rights Law ("CHRL"). Plaintiff, a veteran of the Air Force, who identifies as Muslim and African American, alleges that Defendants City of New York and Loree Sutton (collectively "Defendants") discriminated against him on the basis of his race, religion, and military service-connected disability, and in retaliation for constitutionally protected speech, by terminating his employment on June 2, 2017. Defendants submit this memorandum of law in support of their motion for an order pursuant to Federal Rule of Civil Procedure 12(b), dismissing Plaintiff's Complaint in its entirety as barred by applicable statutes of limitations, and for failure to state a plausible claim upon which relief can be granted.

First, Plaintiff's "Second" and "Third" Causes of Action pursuant to § 1983 and the CHRL are largely barred by the three-year statute of limitations for claims under those statutes. Second, Plaintiff fails to state a plausible claim of discrimination on the basis of his religion, disability, or military service pursuant to the CHRL and USERRA. Third, Plaintiff fails to state a plausible claim for free speech retaliation under § 1983, the First Amendment, or Article I, Section 8 of the New York State Constitution, and fails to state a *Monell* claim against the City pursuant to § 1983. Accordingly, Defendants request that Plaintiff's Complaint be dismissed in its entirety, with prejudice.

## STATEMENT OF FACTS[1]

Plaintiff was hired by DVS as a Community Coordinator in November 2015. *See* ECF Dkt. No. 1 at ¶ 24. Prior to his employment with DVS, Plaintiff served in the United States Air Force from November 2003 until his honorable discharge in January 2005. *Id.* at ¶ 14. Plaintiff alleges he was diagnosed with post-traumatic stress disorder ("PTSD") as a result of his military service. *Id.* at ¶ 15. Plaintiff identifies as Muslim and African American. *Id.* at ¶ 3.

As a Community Coordinator with DVS, Plaintiff was responsible for submitting claims for benefits on behalf of veteran residents of the City of New York to the New York State Division of Veterans Services ("NYS DVS") and U.S. Department of Veterans Affairs ("VA"). *Id.* at ¶ 27. In order to submit those claims, Plaintiff was required to obtain certification by NYS DVS, approval of which was subject to training and a background check by NYS DVS. *Id.* at ¶¶ 27-28. Plaintiff, along with several other Community Coordinators, commenced training by NYS DVS in March 2016. *Id.* at ¶ 48. Thereafter, Plaintiff alleges that one of his supervisors,

---

[1] This statement of facts is derived from the allegations in the Complaint herein (ECF Dkt. No. 1) and the material allegations set forth therein are assumed to be true for purposes of this motion to dismiss only.

Latisha Russaw, informed him that "[i]n connection with the background check…an issue had been raised about [Plaintiff's] 'Black Lives Matter' activism." *Id*. at ¶ 29.  Plaintiff claims that "[i]n his personal, off-duty time, Akkad was attending Black Lives Matter demonstrations and community events, and engaging in personal social media on Black Lives Matter issues and concerns."  *Id.* at ¶ 29.  Plaintiff alleges that Russaw told him to "lay low," but that Plaintiff continued his social activism on behalf of Black Lives Matter and other social justice movements.  *Id.* at ¶ 30.

Plaintiff claims that he disclosed his military service-related PTSD to his supervisor, former Assistant Commissioner Jamal Othman[2], in or about May 2016.  *Id.* at ¶¶ 37-38.  Plaintiff also alleges that, at an unspecified date and time, "Akkad disclosed his PTSD condition to Sutton," and that "[o]n information and belief, Othman also informed Sutton of Akkad's military service-connected mental health disability."  *Id.* at ¶ 39.  Plaintiff claims that in or about July 2016, Sutton expressed to Othman that Plaintiff was a "danger" to Sutton, and a potential "terrorist" because of his PTSD and religion.  *Id.* at ¶¶ 40-41.  Plaintiff also claims Sutton told Othman that Plaintiff was "growing his beard out," "we don't know what he's capable of," and that Plaintiff looked "like an ISIS member."  *Id.* at ¶ 42.  Plaintiff alleges Sutton directed Othman to "run internet searches on [Plaintiff] to check his background and social media posts, to find potentially derogatory information and determine his 'political views.'"  *Id.* at ¶ 44.  Plaintiff claims that "Sutton told Othman that she wanted to find a reason to terminate Akkad because of his mental health disability and political and/or religious views."  *Id.* at ¶¶ 45, 58.

---

[2] Othman is currently suing the City of New York, Sutton, and DVS employee Jason Parker, alleging, *inter alia*, that he was terminated on the basis of his disability and former military service, and in retaliation for alleged protected activity.  *See Othman v. City of New York et al.*, 19 Civ. 10351 (DLC).

Plaintiff further claims that in or around August 2016, Sutton directed Othman to write a memorandum in her name to Quintin Hayes, former Director of Human Resources for the Office of the Mayor, regarding Plaintiff. *Id.* at ¶¶ 46-47. The memo, which Plaintiff identifies as the "Sutton Report," allegedly stated that in March 2016, NYS DVS verbally disclosed several "red flags" about Plaintiff's character which were revealed by their background check. *Id.* at ¶ 48. Plaintiff claims the Sutton Report stated that NYS DVS flagged Plaintiff's "potentially provocative remarks on social media and blogs," as well as that Plaintiff did not complete his two year enlistment in the Air Force, that the "reasons for separation" on Plaintiff's military discharge paperwork stated "Personality Disorder," and that Plaintiff was not available to sign his DD-214 military discharge form. *Id.* at ¶ 49. Plaintiff claims these justifications are false or misleading, because his "provocative remarks" are protected by the First Amendment, his military service was shorter than two years because he was sexually assaulted, bullied, and retaliated against during military service "due to his being LGBTQ," that "Personality Disorder" on his discharge paperwork was a "Don't Ask Don't Tell" era euphemism for Plaintiff's sexual orientation, and that Plaintiff signed his DD-214 military discharge paperwork. *Id.* at ¶¶ 51, 53. Nevertheless, Plaintiff alleges that he was thereafter granted certification by NYS DVS. *Id.* at ¶ 31.

Sutton's report allegedly failed to "disclose the substance of the 'potentially provocative remarks on social media and blogs,'" but recommended that Plaintiff be counseled about his social media, and should agree to delete provocative posts, and refrain from making further provocative posts while a City employee. *Id.* at ¶¶ 54-55. Plaintiff claims that Sutton's report stated that if Plaintiff agreed to these terms, he would be internally transferred. *Id.* Plaintiff alleges Sutton and Othman met with Hayes in September 2016 to discuss the Sutton

Report. *Id.* at ¶ 56.  Plaintiff alleges that during this meeting, Sutton advocated taking adverse action against Plaintiff "because of the political nature of his social media comments." *Id.* at ¶ 58.  Plaintiff claims that Hayes admonished Sutton for her actions against Plaintiff, and instructed Sutton that "(a) Akkad had already passed a background check for his employment; (b) It was inappropriate to continue to dig further into Akkad's background; (c) Sutton may have violated Akkad's rights to political speech by pursuing an adverse action based on Akkad's political views; and (d) Sutton should base any subsequent adverse action purely on work performance." *Id.* at ¶ 60.  Plaintiff claims that months later, Sutton directed Jason Parker, DVS' Director of Administration "to make a report to the NYC Police Department regarding Akkad's purported suspicious activities – his political social media posts." *Id.* at ¶ 61.

Plaintiff alleges that in February or March 2017, he was promoted to the title of "Communications and Special Projects Coordinator," given additional social media responsibilities, and given a salary increase. *Id.* at ¶ 62.  Plaintiff reported to DVS Press Secretary Alexis Wichowski. *Id.*  Plaintiff alleges that prior to this promotion, he was responsible for DVS' social media accounts for several months, and "received positive recognition for his efforts from the Mayor's Office and other important constituencies." *Id.* at ¶ 63.  Plaintiff claims that in May 2017, Wichowski gave Plaintiff a positive performance evaluation, and did not give Plaintiff "any coaching…regarding any deficiencies in his performance." *Id.* at ¶¶ 64-65.

Plaintiff alleges that in April and May of 2017, he was experiencing "some mental health issues, due to events in his personal life." *Id.* at ¶ 68.  Plaintiff claims he informed his supervisors that he wanted to take some time off to address these "mental health issues." *Id.* at ¶¶ 69-70.  Plaintiff alleges that "Defendants were hostile to Akkad taking time off, making it

difficult for him to take days off or leave early for medical appointments." *Id.* at ¶ 73. Plaintiff claims that his supervisors "told him that he needed to use sick time to visit" the City's Employee Assistance Program ("EAP"). *Id.* at ¶ 74. Plaintiff allegedly took sick leave on May 31 and June 1, 2017, due to mental health issues. *Id.* at ¶¶ 68-82. Plaintiff claims that he informed his supervisor Wichowski, as well as DVS' Director of Engagement and Events and DVS' Director of Human Services, of his absence on these days. *Id.* at ¶¶ 78-81. Wichowski alleged told Plaintiff to "rest up and if you need to take the day off, please do. Let me know what you decide." *Id.* at ¶ 79. Plaintiff claims that Defendants refused to pay Plaintiff for his sick leave, as well as for work Plaintiff performed during Fleet Week from May 24 to May 30, 2017. *Id.* at ¶¶ 76, 84.

Defendants allegedly terminated Plaintiff's employment on June 2, 2017. *Id.* at ¶¶ 83-85. Plaintiff claims that Jason Parker, DVS' human resources personnel, and armed security guards met him in the building lobby, fired him, and escorted him out of the building. *Id.* at ¶ 85. Plaintiff alleges that Defendants terminated his employment because of his religion, military service, and disability, and in retaliation for his statements on social media. *Id.* at ¶¶ 97-101. Plaintiff also contends that, after his termination, Defendants terminated his former supervisor Jamal Othman because of his mental disability and military service. *Id.* at ¶¶ 90-95. Plaintiff alleges he sustained economic damages and emotional distress as a result of Defendant's allegedly discriminatory actions. *Id.* at ¶ 102.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S CLAIMS PURSUANT TO THE
CHRL AND 42 U.S.C. § 1983 ARISING PRIOR
TO MAY 31, 2017, ARE BARRED BY
APPLICABLE STATUTES OF LIMITATION**

First, Plaintiff's claims pursuant to the CHRL and 42 U.S.C. §1983[3] arising on or

before May 31, 2017, are barred by applicable statutes of limitations.  The statute of limitations

for employment discrimination and retaliation claims under the CHRL and § 1983 is three-years

from the alleged unlawful discriminatory or retaliatory act.  *See* NYC Admin. Code § 8-502(d);

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) ("Claims under § 1983

are governed by a three-year statute of limitations in New York).  Here, Plaintiff commenced this

action on May 31, 2020, by filing a Complaint.  *See* ECF Dkt. No. 1.  Accordingly, any claims

pursuant to the CHRL and § 1983 arising on or before May 31, 2017, are barred by the

applicable statutes of limitations.  Notably, this means that all of Plaintiff's allegations, <u>except</u>

for his termination on June 2, 2017, are time-barred under the CHRL and § 1983.

---

[3] USERRA states that "[i]f any person seeks to file a complaint or claim with…a Federal or State
court under this chapter…there shall be no limit on the period for filing the complaint or claim."
42 U.S.C. § 4327(b).  Thus, while Defendants argue *infra* Point II.C to dismiss Plaintiff's
USERRA claim pursuant to Fed. R. Civ. P. 12(b)(6), Defendants do not move to dismiss
Plaintiff's USERRA claim on statute of limitations grounds.

## POINT II

## PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM OF DISCRIMIATION ON THE BASIS OF HIS, RELIGION, DISABILITY, OR MILITARY SERVICE

### A.   Motion to Dismiss Standard

To survive a motion to dismiss under FRCP 12(b)(6), a plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citation omitted).  A plaintiff must plead facts sufficient to demonstrate "more than a sheer possibility that a defendant has acted unlawfully. . . [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" and must, therefore, be dismissed.  *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").

In the context of an employment discrimination complaint, this "requirement to plead facts is assessed in light of the presumption that arises in the plaintiff's favor under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in the first stage of the litigation." *Littlejohn v. City of New York*, 795 F.3d 297 at 310 (2d Cir. 2015).  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged her claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**B.     Plaintiff Fails to State a Plausible Disability or Religious Discrimination Claim**

Plaintiff's disability and religious discrimination claims under the CHRL must be dismissed because Plaintiff has not plausibly alleged that Defendants treated him less favorably than similarly situated employees because of Plaintiff's alleged disability or religion.

Claims of disparate treatment under the CHRL, are analyzed using the burden shifting analysis of *McDonnell Douglas*, 411 U.S. at 792. *See Askin v. Dept. of Educ. of the City of New York*, 110 A.D.3d 621, 622 (1st Dep't 2013); *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) ("New York courts examine claims under [the CHRL] with the same analytical lens as corresponding Title VII-based claims"). To establish a prima facie case of discrimination under this framework, a plaintiff must show that **(1)** he is a member of a protected class; **(2)** he was qualified for the position he held; **(3)** he suffered an adverse employment action; and **(4)** the adverse action took place under circumstances giving rise to the inference of discrimination." *Askin*, 110 A.D.3d at 622.

In order to satisfy his burden at the pleadings stage, Plaintiff must plausibly allege that he was treated "less well" than others outside of his protected class. *See Chin v. N.Y.C. Hous. Auth.*, 106 A.D.3d 443, 445 (1st Dep't 2013). While Plaintiff may raise an inference of discrimination based on his religion or claimed disability by alleging that he was treated less favorably than other employees, such allegations must plausibly demonstrate that the other employees were sufficiently similarly situated to Plaintiff with regard to material aspects of his employment, such that the alleged difference of treatment is attributable to discrimination. *See Thomas v. Mintz*, 182 A.D.3d 490, 490 (1st Dep't 2020) (dismissing CHRL race and gender

discrimination claims where complaint did "not allege facts that would establish that similarly situated persons who were male or were not of African American descent were treated more favorably than plaintiff was"); *Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392, 407 (S.D.N.Y. 2012).

In this case, Plaintiff alleges that "Defendants terminated Akkad because he was a Muslim veteran with a mental health disability, and because he requested medical leave to address his mental health disability."   *See* ECF Dkt. No. 1 at ¶ 97.   However, Plaintiff's Complaint presents no direct evidence that Defendants terminated him because of his religion or alleged disability.   Plaintiff alleges that Defendant Sutton's allegedly commented in July 2016, that Plaintiff was "a danger" and a potential "terrorist," was "growing his beard out," looked "like an ISIS member," and that "we don't know what [Plaintiff's] capable of."   *See* ECF Dkt. No. 1 at ¶¶ 40-42.   Plaintiff further alleges that in or about July 2016, Defendant Sutton told Plaintiff's former supervisor that "she wanted to find a reason to terminate Akkad because of his mental health disability and political and/or religious views."   *Id.* at ¶¶ 45, 58.

Generally, "verbal comments may raise an inference of discrimination, but not where they lack a causal nexus to the termination decision."   *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (internal citation and quotes omitted).   The Second Circuit has held that whether remarks suggest discriminatory animus or are merely "stray remarks" depends upon: "**(1)** who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); **(2)** when the remark was made in relation to the employment decision at issue; **(3)** the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and **(4)** the context in which the remark was made (i.e., whether it was related to the decision-making process)."   *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

However, in this case, Defendant Sutton's alleged comments are mere "stray remarks," which do not plausibly establish an inference of discrimination, and the Complaint fails to plausibly allege any causal nexus between those remarks and Plaintiff's termination. While Defendant Sutton was admittedly a "decision-maker" regarding Plaintiff's employment at the time she allegedly uttered the remarks, they were allegedly made **eleven months** before Plaintiff was terminated. *See* ECF Dkt. No. 1 at ¶¶ 40-45, 83-85. The nearly year-long temporal gap between Defendant Sutton's alleged remarks and Plaintiff's termination belies any plausible inference of discriminatory animus or causation. *See Martin v. City Univ. of New York*, 17 Civ. 6791 (KPF), 2018 U.S. Dist. LEXIS 208685, at *24 (S.D.N.Y. Dec. 11, 2018) (ten-month gap between remark about plaintiff's age and plaintiff's termination was too attenuated to infer causation) (collecting cases); *Moore v. Verizon*, 13 Civ. 6467 (RJS), 2016 U.S. Dist. LEXIS 16201, at *24 (S.D.N.Y. Feb. 5, 2016) (dismissing CHRL age discrimination claim where "alleged remarks regarding [p]laintiff's age occurred at least months before [p]laintiff's first suspension and nearly a year prior to her termination, and they are not alleged to have arisen in a context at all related to the decision to suspend and later terminate [p]laintiff."); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (dismissing CHRL age discrimination claim where remarks made between three to eighteen months before plaintiff's termination were too attenuated to suggest causation).

Nor does the Complaint plausibly allege that Defendant Sutton's claimed remarks were at all connected with the decision-making process of terminating him. Indeed, Plaintiff alleges that between the time Sutton allegedly uttered the aforementioned remarks and when Plaintiff was terminated, Sutton promoted Plaintiff, gave him additional responsibilities overseeing the agency's social media presence, and raised Plaintiff's salary. *See* ECF Dkt. No. 1

at ¶¶ 62-63.   Plaintiff's promotion, raise, and increased responsibilities following the alleged stray remarks by Defendant Sutton further undermine any plausible inference that Plaintiff's termination was based on his alleged disability or religion.   *See Ingram v. Nassau Health Care Corp.*, 17 Civ. 5556 (JMA) (SIL), 2020 U.S. Dist. LEXIS 26070, at *3 (E.D.N.Y. Feb. 13, 2020) (dismissing disability discrimination and retaliation claims for failure to state a claim where Plaintiff alleged that prior to his termination, defendants promoted him while aware of his alleged disability and protected activity).

Moreover, the Complaint does not contain any factual allegations of disparate treatment to create a plausible inference that Plaintiff's termination was at all motivated by his alleged disability or religion.   *See Massaro v. Dept. of Educ. of the City of New York*, 121 A.D.3d 569, 570 (1st Dep't 2014).   Plaintiff does not allege that he was replaced by a non-Muslim or non-disabled individual, nor does Plaintiff's Complaint identify a similarly situated coworker outside of his alleged protected classes who allegedly received more favorable treatment than Plaintiff.   *See e.g. Thomas*, 182 A.D.3d at 490 (affirming dismissal of CHRL discrimination claims where the Complaint "does not allege facts that would establish that similarly situated persons who were male or were not of African American descent were treated more favorably than plaintiff was," but rather, "merely asserts the legal conclusion that defendants' adverse employment actions and plaintiff's termination were due to race and gender"); *Mauro v. New York City Dept. of Educ.*, 19 Civ. 4372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 76379, at *13-15 (S.D.N.Y. Apr. 29, 2020), *adopted* 2020 U.S. Dist LEXIS 120830, at *1 (S.D.N.Y. July 9, 2020) (recommending dismissal of CHRL discrimination claims for failure to plead discriminatory animus, where, in relevant part, the complaint failed to plausibly allege a single comparator to whom plaintiff was similarly situated and who allegedly received more favorable treatment).

Rather, many of Plaintiff's allegations are based upon Plaintiff's self-serving "information and belief," bereft of any factual support, which plainly fails to establish a plausible claim of discrimination.  *See* ECF Dkt. No. 1 at ¶¶ 39, 61, 90, 93, 94, 95.  *See e.g. Hernandez v. City of New York,* 18 Civ. 5870 (ER), 2019 U.S. Dist. LEXIS 96187, at *7 (S.D.N.Y. Jun. 7, 2019) ("Though a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible…such allegations must be accompanied by a statement of the facts upon which the belief is founded.") (internal citations and quotes omitted).

Plaintiff's allegations that Defendants "were hostile" to him taking sick leave, and "ma[de] it difficult for him to take days off or leave early for medical appointments" (ECF Dkt. No. 1 at ¶ 73), are entirely conclusory, and fail to plausibly allege disability discrimination. While an employer's blanket denial of sick leave to an employee may constitute an adverse employment action under the CHRL, Plaintiff's Complaint fails to allege any facts plausibly establishing that Defendants' purported failure to pay him for sick leave taken on May 31 and June 1, 2017, was at all motivated by his alleged disability, religion, or military service.  *See Marquez v. Starrett City Assoc.*, 406 F. Supp. 3d 197, 207 (E.D.N.Y. 2017) (dismissing CHRL disability discrimination claim where plaintiff failed to allege that defendants' alleged denial of plaintiff's right to use paid sick leave was connected to his alleged disability)

Plaintiff's claims of discrimination are merely the "recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011); *see also Elgalad v. New York City Dept. of Educ.*, 17 Civ. 4894 (VSB), 2018 U.S. Dist. LEXIS 162838, at *20 (SDNY Sep. 24, 2018)

(citing *Bermudez*).   Accordingly, this Court should dismiss Plaintiff's disability and religious discrimination claims under the CHRL for failure to state a plausible claim upon which relief can be granted.

**C.   Plaintiff Fails to State a Plausible Military Service Discrimination Claim Under USERRA**

Moreover, Plaintiff fails to state a plausible claim of military service discrimination pursuant to USERRA, 38 U.S.C. § 4301 *et seq.*  USERRA states in relevant part that:

> [a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. §4311(a).  "The purpose of USERRA is to encourage military service 'by eliminating or minimizing the disadvantages to civilian careers'; 'to minimize the disruption to the lives' of service members and their employers 'by providing for the prompt reemployment' of service members; and 'to prohibit discrimination' against service members."  *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 174 (2d Cir. 2011) (quoting 38 U.S.C. § 4301(a)).

In order to state a claim under USERRA, a plaintiff bears the burden, upon a motion to dismiss, of plausibly pleading factual allegations that "his military service or any protected activity was a 'substantial or motivating factor in the adverse [employment] action[s].'"  *Hunt v. Klein*, 476 F. App'x 889, 891 (2d Cir. 2012) (quoting *NLRB v. Transportation Management*, 462 U.S. 393, 401 (1983)).  "Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time

between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Sheehan v. Dept. of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)

Here, Plaintiff claims that Defendants: **(1)** "unlawfully denied Plaintiff the benefits of employment in violation of §4311(a) of USERRA by using his service-connected mental health disability as a negative factor in evaluating Plaintiff's performance and in terminating him;" **(2)** "denied Plaintiff reasonable accommodation due to his military service-connected disability;" and **(3)** terminated Plaintiff because of his "military service, and his service-connected mental health disability."  ECF Dkt. No. 1 at ¶¶ 105-107.

Plaintiff's first and second arguments regarding his "[military] service-connected disability" fail to state a cognizable claim under USERRA.  *See Soules v. Connecticut*, 14 Civ. 1045 (VLB), 2015 U.S. Dist. LEXIS 131985, at *30 (D. Conn. Sep. 30, 2015), *aff'd in part, remanded on other grounds*, 669 F. App'x 54, 55 (2d Cir. 2016) (allegation that defendants suspended him "due to his disability of PTSD" sustained during combat failed to state a claim pursuant to USERRA); *see also Carroll v. Delaware Riv. Port Auth.*, 89 F. Supp. 3d 628, 633 (D.N.J. 2015) ("a USERRA plaintiff has the initial burden of demonstrating that his military service, as distinct from a disability resulting from service, was a substantial or motivating factor in the employer's decision").  Indeed, the Merit Service Protection Board ("MPSB") has repeatedly held that claims of discrimination based upon an individuals' military service-connected disability are not cognizable under USERRA.  *See McAllister v. United States Postal*

*Serv.*, 2020 MSPB LEXIS 2606, *4 (M.S.P.B. June 25, 2020); *Lentz v. DOI*, 2015 MSPB LEXIS 3586, *11 (M.S.P.B. April 27, 2015); *Marquez v. United States Postal Serv.*, 2009 MSPB LEXIS 602, *7 (M.S.P.B. January 9, 2009); *Ray v. Dep't of Veterans Affairs*, 1999 MSPB LEXIS 1394, *2 (M.S.P.B. October 15, 1999).   Accordingly, while Plaintiff may attempt to plead causes of action alleging disability discrimination under other statutes, such as Plaintiff's "Third" Cause of Action pursuant to the CHRL, USERRA is not a proper statutory avenue for such claims.

With regard to Plaintiff's third argument that Defendants terminated him because of his military service, the Complaint does not plead any facts plausibly establishing that Plaintiff's military service was a motivating factor in his termination.   Plaintiff alleges that "[t]he Sutton Report's references to [his] military service and reasons for separation evidence bias against [Plaintiff] due to his military service and mental health." *See* ECF Dkt. No. 1 at ¶ 52. However, Plaintiff alleges that the issues of how long Plaintiff served in the Air Force before his discharge, and the alleged lack of signature on Plaintiff's military discharge paperwork, were raised by NYS DVS, not Defendants, during NYS DVS' background check of Plaintiff.   *Id.* at ¶¶ 48-49.   Moreover, Plaintiff does not allege that he suffered any adverse employment action as a result of Defendant Sutton's recitation of those issues raised by NYS DVS in the Sutton Report. Indeed, as argued *supra*, Defendants thereafter promoted Plaintiff, raised his salary, and gave him additional responsibilities over the agency's social media, all while allegedly aware of Plaintiff's military service, belying any inference of discriminatory animus.   *See supra* pp. 11-12. Accordingly, the Complaint fails to plausibly allege that these comments in the Sutton Report had any causal connection to his eventual termination, approximately eleven months after the Sutton Report was written.

Plaintiff also alleges, "on information and belief, when a veteran with a mental and/or psychological disability left DVS, Sutton expressed her pleasure and learning of the employee's departure" and told Othman "no more troubled veterans."  ¶¶ 94-95.  The Complaint does not allege that Sutton made this remark about Plaintiff, nor alleges when it was made or in what context.  This alleged comment by Sutton is no more than a "stray remark," which has no plausible connection to any adverse employment action against Plaintiff.  *See Luka*, 263 F. Supp 3d at 487.

Moreover, Plaintiff's Complaint fails to identify a single similarly-situated non-veteran employee who was treated more favorably than Plaintiff, or otherwise allege any facts demonstrating that Plaintiff was treated differently than other employees because of his military service.  *See Hunt v. Klein,* 10 Civ. 2778 (GBD), 2011 U.S. Dist. LEXIS 14918, at *1, 3 (S.D.N.Y. Feb. 10, 2011), *aff'd* 476 F. App'x 889 (2012) (dismissing complaint because plaintiff "merely describe[d] various disciplinary actions taken against him, and note[d] that Plaintiff is a military service member," but failed to allege facts demonstrating that he was disciplined because of his military status); *see also Davis v. New York City Dept. of Corr.*, 17 Civ. 3863 (MKB), 2017 U.S. Dist. LEXIS 193578, at *18 (E.D.N.Y. Nov. 22, 2017).

Finally, Plaintiff's allegations that Defendants terminated him on the basis of his military service are implausible because Defendant Sutton is a military veteran, and thus, belongs to the same protected class and Plaintiff.  *See Nachmany v. FXCM, Inc.*, 16 Civ. 225 (DAB), 2020 U.S. Dist. LEXIS 7161, at *10-16 (S.D.N.Y. Jan. 9, 2020) (dismissing CHRL gender discrimination claim where alleged offender was same gender as plaintiff); *Fleurentin v. New York City Health & Hosps. Corp.*, 18 Civ. 5004 (AMD) (RLM), 2020 U.S. Dist. LEXIS 908, at *17-18 (E.D.N.Y. Jan. 3, 2020) (dismissing CHRL race discrimination claims where

plaintiff's supervisor was the same race as plaintiff).   Accordingly, for the reasons set forth above, the Court should dismiss Plaintiff's "First" Cause of Action pursuant to USERRA for failure to state a claim.

**POINT III**

**PLAINTIFF FAILS TO STATE A PLAUSIBLE**
**FREE SPEECH RETALIATION CLAIM**

To state a cognizable free speech retaliation claim under either the First Amendment pursuant to 42 U.S.C. § 1983, or Article I, Section 8 of the NY State Constitution[4], a public employee must plausibly establish: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Odermatt v. New York City Dept. of Educ.*, 694 F. App'x 842, 845 (2d Cir. 2017) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 106-07 (2d Cir. 2001)).

**A.      Plaintiff Fails to Plausibly Allege that he Engaged in Protected Speech**

As an initial matter, Plaintiff fails to plausibly allege that he engaged in speech protected by the First Amendment or Article I, Section 8 of the New York Constitution.   As an initial matter, there is no private right of action under Article I, Section 8 of the New York Constitution where, as here, Plaintiff's free speech retaliation claim is remediable under other statutes such as 42 U.S.C. § 1983.   *See Allen v. Antal*, 665 F App'x 9, 13 (2d Cir. 2016); *Isaac v. City of New York*, 16 Civ. 4729 (KAM), 2018 U.S. Dist. LEXIS 132995, at *57 (E.D.N.Y. Aug. 6, 2018), *adopted by* 2018 U.S. Dist. LEXIS 163536 (E.D.N.Y. Sep. 24, 2018).

---

[4] Claims of retaliation for the exercise of the right to free speech under Article I, §8 of the New York State Constitution are governed by the same principles applicable to First Amendment claims. *Dotson v. Farrugia*, 11 Civ. 1126 (PAE), 2012 U.S. Dist. LEXIS 41195 (S.D.N.Y. Mar. 26, 2012); *Carter v. Inc. Village of Ocean Beach*, 693 F. Supp. 2d 203, 2012 (E.D.N.Y. 2010).

Whether a public employee's speech is protected is determined by a two-step inquiry.  First the Court must determine "whether the employee spoke as a citizen on a matter of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  To make this initial determination, the Court must consider: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee."  *Id*. (citing *Jackler v. Byrne*, 658 F.3d 225, 228 (2d Cir. 2011)).  "If the answer to either question is no, that is the end of the matter.  If, however, both questions are answered in the affirmative, the court then proceeds to the second step of the inquiry, commonly referred to as the *Pickering* analysis: whether the relevant governmental entity 'had an adequate justification for treating he employee differently from any other member of the public based on the government's needs as an employer.'"  *Id.* (quoting *Lane v. Franks*, 573 U.S. 228, 229 (2014)).

Here, Plaintiff's Complaint fails to specifically identify any statements made by Plaintiff which were purportedly protected by the First Amendment or the New York State Constitution.  Plaintiff only cryptically alleges that his "personal social media…addresses subjects such as LGBT rights, environmental justice, the Black Lives Matter movement, gentrification, affordable housing, indigenous human rights, police misconduct, Islamophobia, white supremacy, and other civil rights and human rights issues."  *See* ECF Dkt. No. 1 at ¶ 20-21.  Plaintiff seemingly alleges that Defendants retaliated against him for comments on his social media "on behalf of Black Lives Matter" in early 2016.  *Id.* at ¶¶ 29-30.

Plaintiff's vague allegations about his statements on social media are insufficient to plead a plausible free speech retaliation claim.  *See Solomon v. De Blasio*, 18 Civ. 5 (MKB) (CLP), 2018 U.S. Dist. LEXIS 213929, at *25 (E.D.N.Y. Dec. 18, 2018) (recommending dismissal of First Amendment retaliation claims where "nowhere in the Complaint does

[plaintiff] provide any detail as to whom she complained to, what she said, and when she said it"); *Jeune v. Crew*, 16 Civ. 2437 (MKB), 2017 U.S. Dist. LEXIS 161739 at *22-26 (E.D.N.Y. Sept. 29, 2017) (plaintiffs' allegations that they reported that the City University of New York, among other entities, "intentionally covered up fraud, corruption and waste of taxpayer monies" were "too conclusory to allege protected speech.")

Accordingly, Plaintiff's conclusory allegations about the nature of his alleged remarks on social media fail to plausibly establish that Plaintiff engaged in protected activity under the First Amendment or Article I, Section 8 of the New York Constitution.

**B.     Plaintiff Fails to Plausibly Allege any Causal Connection between Protected Speech and Plaintiff's Termination**

Finally, the Complaint fails to plausibly establish a causal connection between Plaintiff's alleged protected speech and any adverse employment action.   A plaintiff can establish causation to support a claim of free speech retaliation by plausibly alleging direct evidence that an adverse employment action was motivated by his or her protected speech, or temporal proximity between the adverse employment action and the protected speech.   *See e.g. Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist.*, 637 F. App'x 16, 19 (2d Cir. 2016).

In this case, Plaintiff fails to plausibly allege any causal connection between his alleged protected statements and his termination.   Plaintiff fails to allege any direct evidence connecting Plaintiff's termination with his alleged comments on social media.   Plaintiff's sole allegation attempting to link his termination to his social media activity is that, during a meeting in September 2016, approximately nine months before Plaintiff's termination, Defendant Sutton allegedly "advocated to [Quintin] Hayes that adverse action should be taken against Akkad because of the political nature of his social media comments."   *See* Complaint at ¶ 57.   However, Plaintiff alleges that Defendants thereafter promoted him to a title with additional social media

responsibilities on behalf of DVS, and raised his salary (*Id.* at ¶ 62), belying any plausible inference of retaliatory animus. *See Ingram*, 2020 U.S. Dist. LEXIS 26070, at *3.

Plaintiff further fails to plausibly demonstrate causation based upon temporal proximity between his alleged protected speech on social media and his termination. While, as argued *supra*, the Complaint fails to identify any particular statements which Plaintiff alleges constitute protected activity, the Complaint references Defendants' responses to Plaintiff's social media posts occurring on or before March 2016. Plaintiff was terminated on June 1, 2017, at least one year and three months after Plaintiff's alleged, protected social media statements. The lengthy gap between Plaintiff's alleged protected activity and his termination further belies any inference of causation." *See Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (no causation where time lapses between Plaintiff's protected activities and alleged adverse actions ranged from two months to several years); *Williams v. City of New York*, 11 Civ. 9679 (CM), 2012 U.S. Dist. LEXIS 112482, at *31 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged"). Therefore, for the reasons set forth above, Plaintiff fails to plausibly allege any causal connection between his purported protected activity and his termination.

**C.     All Claims against Defendant City Pursuant to 42 U.S.C. § 1983 Must be Dismissed**

Finally, to the extent Plaintiff's "Second" Cause of Action for alleges a claim pursuant to 42 U.S.C. § 1983 claim against Defendant City, those claims must be analyzed in accordance with *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," and can only be sued under § 1983 if the plaintiff's injury is the result of a municipal custom, policy, or practice. *Monell*, 436 U.S. at 658; *see also Los Angeles County v. Humphries*, 562 U.S. 29, 36 (2010); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257

(2009).   To state a plausible *Monell* claim, a plaintiff "need not identify an express rule or regulation," but must otherwise show that "a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials."   *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)). In this case, Plaintiff has failed to allege any facts plausibly suggesting that the City has a policy or practice of retaliating against employees for speech protected by the First Amendment or Article I, Section 8 of the New York Constitution. Accordingly, Plaintiff's § 1983 claim against Defendant City must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant

this motion and dismiss the Complaint in its entirety, together with such other and further relief

as this Court deems just and proper.

Dated:        Brooklyn, New York
                August 6, 2020

                                    **JAMES E. JOHNSON**
                                    Corporation Counsel of the
                                      City of New York
                                    Attorney for Defendants
                                    100 Church Street, Room 2-125
                                    New York, New York 10007
                                    (212) 356-1105
                                    jshaffer@law.nyc.gov

By:                                 _____
                                    J. Kevin Shaffer
                                    Assistant Corporation Counsel

Danielle Dandrige,
J. Kevin Shaffer,
    Of Counsel.