UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

ACHMAT AKKAD

                         Plaintiff,

      -against-

THE CITY OF NEW YORK, and FORMER
COMMISSIONER LOREE SUTTON, in her individual
capacity,

                     Defendants.

------------------------------------------------------------------ X

Civ. 20 CV 4152 (AKH)(GWG)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**


LAW OFFICES OF
DEBORAH H. KARPATKIN
99 Park Avenue, Suite 2600.
New York, New York 10016
(646) 865-9930


*Attorney for Plaintiff Achmat Akkad*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT  ……………………………….………...          1

STATEMENT OF FACTS  ………………………………..……………...          2

LEGAL STANDARD ……………………………………………………..          6

ARGUMENT …………………………………………………….………..          7

    I.        AKKAD'S USERRA CLAIM SHOULD NOT BE DISMISSED….          7

        A. Defendants' discriminatory treatment of Akkad
           because of his military-service connected PTSD
           states a claim under USERRA ………………………………..          7
        B. Akkad has plausibly pleaded that his status as a veteran with
           PTSD was a substantial or motivating factor in his termination……          8
        C. Defendants argue an impermissibly narrow reading of USERRA….          11
        D. Akkad's USERRA claim is not implausible because
           Defendant Sutton is a veteran..…………………………………………          13

    II.       AKKAD'S FREE SPEECH RETALIATION CLAIM SHOULD NOT
           BE DISMISSED ……………………………………………………          14

        A. The Complaint plausibly alleges that Akkad engaged in protected
           speech…………………………………………………………………          15
        B. The Complaint plausibly alleges a causal connection between Akkad's
           protected speech and his termination …………………………………          16
        C. Akkad's claim under the New York State Constitution should not be
           dismissed. …………………………………………………………..          18
        D. Akkad has plausibly pleaded municipal liability ……………………..          18

    III.     AKKAD'S DISABILITY AND RELIGIOUS DISCRIMINATION
           CLAIMS UNDER THE NYCHRL SHOULD NOT BE DISMISSED.          19

        A. Akkad has plausibly pleaded religious and disability discrimination …          19
        B. Akkad has plausibly pleaded discriminatory motive…………………..          20

    IV.       AKKAD'S ALLEGATIONS ARE NOT TIME-BARRED …………          26

CONCLUSION ……………………………………………………………….          27

# TABLE OF AUTHORITIES

## Cases

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ...................................... 21, 22

*AMTRAK v. Morgan*, 536 U.S. 101 (2002).......................................................................... 26

*Angiuoni v. Town of Billerica*, 999 F. Supp. 2d 318 (D. Mass. 2014) ........................................ 8

*Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010). ................................................... 6, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), ............................................................. 7, 24

*Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008) ...................................... 10

*Brown v. City of N.Y.*, 622 F. App'x 19 (2d Cir. 2015)........................................................ 17

*Cain v. Exxon Mobil Corporation*, 400 F. Supp. 3d 514 (M.D. La. 2019) ................................ 8

*Carroll v. Del. River Port Auth.*, 89 F. Supp. 3d 628 (D.N.J. 2015) ...................................... 12

*Chin v. N.Y.C. Hous. Auth.*, 106 A.D.3d 443, 965 N.Y.S.2d 42 (1st Dept. 2013)..................... 22

City of *St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ......................................................... 18

*Danzer v. Norden Sys., Inc.*, 151 F.3d 50 (2d Cir. 1988)...................................................... 13

*Davis v. N.Y.C. Dep't of Corr.*, No. 17-CV-3863 (MKB), 2017 U.S. Dist. LEXIS 193578 (E.D.N.Y. Nov. 22, 2017) ....................................................................................................................... 10

*Dotson v. Farrugia*, 2012 U.S. Dist. LEXIS 41195 (S.D.N.Y. Mar. 26, 2012)................................... 15, 18

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009). ............................................................. 17, 23

*Farmer v. Shake Shack Enters., LLC*, 2020 U.S. Dist. LEXIS 128272 (S.D.N.Y. July 21, 2020) ............ 20

*Feingold v. New York*, 366 F.3d 138 (2d Cir.2004)............................................................. 13

*Fleurentin v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-05004 (AMD) (RLM), 2020 U.S. Dist. LEXIS 908 (E.D.N.Y. Jan. 3, 2020) ...................................................................................... 14

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)....................................................................... 10

*George v. Leavitt*, 407 F.3d 405 (2005) ......................................................................... 10

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134 (2d Cir. 2010) ................................................ 23

*Hernandez v. City of N.Y.*, 2019 U.S. Dist. LEXIS 96187 (S.D.N.Y. June 7, 2019)..................... 25

*Hunt v. Klein*, No. 10 cv 02778 (GBD), 2011 U.S. Dist. LEXIS 14918 (S.D.N.Y. Feb. 9, 2011) ............ 10

*Ingram v. Nassau Health Care Corp.*, No. 17-CV-05556 (JMA)(SIL), 2020 U.S. Dist. LEXIS 26070 (E.D.N.Y. Feb. 13, 2020).......................................................................................... 17, 24

*Jeune v. Crew*, No. 16-CV-1107 (MKB), 2017 U.S. Dist. LEXIS 161739 (E.D.N.Y. Sep. 29, 2017) ...... 16

*Kirkendall v. Dep't of the Army* , 94 M.S.P.R. 70 (M.S.P.B. August 29, 2003) ........................... 8

*Lentz v. DOI*, 2015 MSPB LEXIS 3586 (M.S.P.B. April 27, 2015) ........................................ 12

*Lifranc v. N.Y. City Dep't of Educ.*, No. 07 Civ. 1109, 2010 U.S. Dist. LEXIS 34009 (E.D.N.Y. Apr. 6, 2010) ................................................................................................................. 14

*Littlejohn v. City of New York*, 795 F.3d 297(2d Cir. 2015) ................................................ 6, 20

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009)........................................ 20

*Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197 (E.D.N.Y. 2017).................................. 25

*Marquez v. United States Postal Serv.*,  2009 MSPB LEXIS 602 (M.S.P.B. January 9, 2009) ............... 12

*Martin v. City Univ. of N.Y.*, 2018 U.S. Dist. LEXIS 208685 (S.D.N.Y. Dec. 11, 2018) .................. 25

*Massaro v. Dep't of Educ. of the City of N.Y.*, 121 A.D.3d 569, 993 N.Y.S.2d 905 (1st Dept. 2014)........25

*Mauro v. N.Y.C. Dep't of Educ.*, No. 19-CV-04372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 76379 (S.D.N.Y. Apr. 29, 2020), *adopted* 2020 U.S. Dist. LEXIS 120830 (S.D.N.Y. July 9, 2020) ..............25

*McAllister v. United States Postal Serv.*, 2020 MSPB LEXIS 2606 (M.S.P.B. June 25, 2020).................12

*McGuffin v. SSA*, 942 F.3d 1099 (Fed. Cir. 2019) ......................................................................................13

*McMillan v. DOJ*, 812 F.3d 1364 (Fed. Cir. 2016)......................................................................................13

*Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431 (S.D.N.Y. 2015) ....................................25

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) ....................................20

*Monell v. New York City Dept. of Soc. Servs*, 436 U.S. 658 (1978). ..........................................................18

*Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist.*, 637 F. App'x 16 (2d Cir. 2016). .......................15

*Nachmany v. FXCM, Inc.*, 2020 U.S. Dist. LEXIS 7161 (S.D.N.Y. Jan. 9, 2020)....................................14

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998)........................................................................13

*O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 528-29 n.3, 523 N.E.2d 277, 528 N.Y.S.2d 1 (1988). 18

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ..............................................................................................7

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986))................................................................................18

*Peterson v. DOI*, 71 M.S.P.R. 227, 236 (M.S.P.B. July 19, 1996)...........................................................8, 11

*Ray v. Dep't of Veterans Affairs*, 84 M.S.P.R. 108 (M.S.P.B. October 15, 1999) .....................................13

*Roth v. Jennings,* 489 F.3d 499 (2d Cir. 2007). ...........................................................................................6

*Rotundo v. Vill. of Yorkville*, No. 6:09-CV-1262, 2011 U.S. Dist. LEXIS 21663 (N.D.N.Y. Mar. 4, 2011). ....................................................................................................................................................18

*Sheehan v. Department of Navy*, 240 F. 3d 1009 (Fed. Circ. 2001) ......................................................8, 10

*Smith v. Cty. of Suffolk*, 776 F.3d 114 (2d Cir. 2015). ...............................................................................16

*Solomon v. De Blasio*, No. 18 CV 0005 (MKB), 2018 U.S. Dist. LEXIS 213929 (E.D.N.Y. Dec. 18, 2018) ...............................................................................................................................................16

*Soules v. Connecticut,* No. 3:14-CV-1045 (VLB), 2015 U.S. Dist. LEXIS 131985 (D. Conn. Sep. 30, 2015) ...............................................................................................................................................12

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008). ...............................................................10

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013). ........................................................................17, 24

*Thomas v. Mintz*, 182 A.D.3d 490, 122 N.Y.S.3d 21 (1st Dept. 2020), ....................................................22

*Walton v. Safir*, 122 F. Supp. 2d 466 (S.D.N.Y. 2000)..............................................................................18

*Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015). ......................................................................................7

*Williams v. City of N.Y.*, 2012 U.S. Dist. LEXIS 112482 (S.D.N.Y. Aug. 8, 2012)..................................17

## Statutes

38 U.S.C. §4301(a)(3)...................................................................................................................................11

38 U.S.C. § 4303(2)......................................................................................................................................11

38 U.S.C. §4311(a). ...............................................................................................................................passim

38 U.S.C. §4324(a) .......................................................................................................................................12

38 U.S.C. §4311(a). ......................................................................................................................................11

42 U.S.C. §1983........................................................................................................................................2, 26

Administrative Code of the City of New York, §§8-101 et seq.,………………………………… passim

## Constitutional Provisions

New York State Constitution, Art. 1, §8 ................................................................................................18

## Legislative History

H.R. Rep. No. 65, Part 1, 103d Cong., 1st Sess. 21, 23 (1993) ...................................................11
140 Cong. Rec. H9133 (daily ed. Sept. 13, 1994) ......................................................................11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- X

ACHMAT AKKAD

                              Plaintiff,

          -against-

THE CITY OF NEW YORK, and FORMER                      Civ. 20 CV 4152 (AKH)(GWG)
COMMISSIONER LOREE SUTTON, in her individual
capacity,

                              Defendants.

------------------------------------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**PRELIMINARY STATEMENT**

Discrimination against disabled veterans remains a sad reality in American life.
Stereotypes persist.  As set forth in the Complaint, that is the view is evidently held by defendant
former Commissioner Loree Sutton, a veteran herself, who led the NYC Department of Veterans'
Services (DVS), where plaintiff Achmat Akkad worked from 2015 until he was unlawfully fired
in 2017.

Mr. Akkad, who is Black and Muslim, is an Air Force veteran with a service-connected
disability of PTSD.  Akkad is also a social activist, visible in his personal life on social media in
support of Black Lives Matter and other social justice causes.   Defendant Sutton wanted Akkad
reprimanded because of the social justice content of his personal social media posts. She described
him as a "danger" and a potential "terrorist" because of his military service-connected mental
health disability and his Muslim faith.

Sutton specifically referred to Akkad's growing beard, a manifestation of his Muslim faith,
stating: "He's growing his beard out," "we don't know what he's capable of," and he "looks like

an ISIS member." Sutton was told she couldn't reprimand Akkad for his social media posts, but she found a way to get rid of him anyway. Defendants fired Akkad, for no apparent reason, right after he took a few days off to address his mental health concerns. Sutton treated other DVS employees with service-connected mental health disabilities with similar discriminatory bias.

These facts give rise to Akkad's well-pleaded claims of discrimination under the federal Uniformed Services Employment and Reemployment Rights Act (USERRA), and the New York City Human Rights Law (NYCHRL), and his well-pleaded claim of retaliation for the exercise of his free speech rights under 42 U.S.C. §1983 and Art. I §8 of the New York State Constitution.

Akkad submits this memorandum of law in opposition to defendants' motion to dismiss. Defendants advance the erroneous argument that Akkad's discrimination and retaliation claims are not plausible, notwithstanding detailed pleading evidencing defendant Sutton's explicit animus to Akkad's religion and military service-connected disability, and explicit animus to Akkad's off-duty protected speech. Defendants also advance erroneous legal arguments seeking to bar plaintiff's free speech claims against defendant City, and under the New York State Constitution.

Akkad's Complaint pleads ample factual allegations to establish his claims, and defendants' motion should be denied.

## STATEMENT OF FACTS

*Akkad's background*. Plaintiff Achmat Akkad, an honorably discharged Air Force veteran, is a Black LGBTQ male. He observes the Muslim faith. He was raised in poverty by a single mother and his grandmother, enlisted in the Air Force, and then earned a Bachelor's degree. Compl. ¶¶11-13, 18.

*Akkad's military service.* Akkad served in the Air Force from November 2003 until his Honorable Discharge in January 2005. With the "Don't Ask, Don't Tell" ("DADT") policy still in

effect, and before PTSD was properly recognized by the military, the Air Force ignored Akkad's complaints of abusive bullying and violent sexual assault.  Knowing his LGBTQ status, and the trauma symptoms he was experiencing, the Air Force issued Akkad with an Honorable Discharge, because of a claimed "personality disorder."  This was, then, a typical "reason for separation" for LGBTQ service members, and for service members experiencing PTSD. *Id.* ¶¶14-17, 53.

*Akkad's qualifications and exemplary performance.*  Akkad came to employment at DVS with a track record of advocacy on behalf of veterans.  Once hired, he received certification by the New York State Division of Veterans' Services, which required that he pass a background check. Akkad was an exemplary employee of DVS, an agency of Defendant City, from November 2015 until his unlawful termination in June 2017.  The Mayor's Office showcased him in a photo-essay, "Speaking Out: Diverse Black Male Voices of City Hall," and invited him to participate in a City Hall initiative, "Black Men in Government."  His work was praised by the Veteran's advocacy community, by his DVS colleagues, by City Hall, and by DVS constituents.  His performance was highly rated by his DVS supervisors, and he was commended for his excellence, his positive and professional representation of himself and DVS, and his improvement of DVS digital communications.  *Id.* ¶¶1, 13, 27-36, 64-66, 88-89.

*Akkad's First Amendment-protected speech on social justice.*  Akkad's lifelong commitment to social justice manifests in his work, his advocacy, and his personal social media. His personal social media, which he engages in as private citizen and not pursuant to his official duties, addresses subjects such as LGBTQ rights, environmental justice, the Black Lives Matter movement, gentrification, affordable housing, indigenous human rights, police misconduct, Islamophobia, white supremacy, and other civil rights and human rights issues.   During his employment at DVS, in his personal, off-duty time, Akkad attended Black Lives Matter

demonstrations and community events, and engaged in personal social media on Black Lives Matter issues and concerns.   Defendants knew about this: in fact, one of Akkad's supervisors warned him about his Black Lives Matter activism.  *Id.* ¶¶19-21, 29-30.

*Defendants' hostility to Akkad's service-connected PTSD, Muslim faith, and off-duty speech.* Both defendant Sutton and Akkad's supervisor, Assistant Commissioner Jamal Othman, knew that Akkad suffered from PTSD from his prior military service.   Sutton told Othman that she believed Akkad was a "danger" because of this, and his Muslim faith.  Sutton commented to Othman, "He's growing his beard out." "We don't know what he's capable of."  "He looks like an ISIS member." Sutton told Othman to investigate Akkad, to find potentially derogatory information, and to determine his "political views."  She told Othman she wanted to find a reason to terminate Akkad, for these reasons. *Id.* ¶¶37-45.

*The Sutton Report: direct evidence of bias.* Sutton told Othman to draft a report in her name, to provide to Quintin Hayes, then Director of Human Resources for the Mayor's Office. Othman did as he was directed, resulting in the August 3, 2016 Sutton Report.

The Sutton Report is direct evidence of Sutton's bias against Akkad, due to his military status, his disability status, and his protected First Amendment activity.  Sutton characterized as "red flags" Akkad's military service and his mental health, in particular the duration of his service, and the "personality disorder" reason for separation. Sutton pointed out Akkad's "potentially provocative remarks on social media and blogs."  She wanted Akkad counseled to "delete all social media posts of a provocative nature and refrain from writing such posts while an employee of the City." *Id.* ¶¶ 49-55.

*The Sutton Report meeting, and afterwards.*  About a month later – in September 2016 - Sutton met with Hayes about the Sutton Report, but the meeting did not go as Sutton wished.

Instead of giving Sutton the go ahead to take adverse action against Akkad, as she continued to advocate for at the meeting, Hayes admonished Sutton, instructing her that she may have violated Akkad's legal rights to political speech, and that any adverse action against Akkad should be based purely on work performance. *Id.* ¶¶57-60.

Undeterred, Sutton continued to pursue Akkad because of his status and political speech. On information and belief, several months after being admonished by Hayes for targeting Akkad, Sutton directed Jason Parker, then Director of Administration for DVS, to make a report to the NYC Police Department regarding Akkad's purported suspicious activities – his political social media posts. *Id.* ¶61.

***Promotion.***   About five months after the Sutton Report meeting, in or about February or March 2017, Akkad was promoted (with a salary increase) to a new role, now reporting to DVS Press Secretary Alexis Wichowski with the functional title of Communications and Special Projects Coordinator.  The promotion reflected the additional DVS social media responsibilities Akkad had already been performing, with excellence. In May 2017, Wichowski evaluated Akkad's performance, and gave him high ratings on all criteria.  Wichowski never coached him on any performance deficiencies, and never issued him a performance improvement plan.  *Id.* ¶¶62-66.

***Mental health symptoms manifest.*** From time to time during the course of his DVS employment, Akkad's PTSD symptoms would manifest, requiring time off work for medical appointments.  Just before he was fired, in April – May 2017, Akkad was experiencing symptoms, and on the advice of his health care provider, asked his supervisors for time off, explaining that it was needed to address his mental health issues.  Defendants did not make this easy for Akkad, telling him that he needed to use sick time to visit EAP.  *Id.* ¶¶ 67-74.

Despite his symptoms, following the military mantra "mission before self," Akkad continued to work, and performed his duties to a high standard. Fleet Week was coming up (May 24-30, 2017), and Akkad focused on his many responsibilities during this peak period for DVS. Right after Fleet Week, on May 30, 2017, Akkad wrote to his supervisor, Wichowski, that he was having some "major issues physically and mentally" and requested some time off.  He took May 31, 2017 and June 1, 2017 as sick days. *Id.* ¶¶75-82.

***DVS fires Akkad.***  Defendants fired Akkad on June 2, 2017.  On his way into the office, in the DVS building lobby, Akkad was met by DVS's HR director and armed security guards, publicly fired, and escorted out of the building. DVS didn't pay Akkad for his last week of work, his sick days, or his last day of work.  (¶¶83-86).

***Sutton's animus to other DVS employees with military service-connected mental health issues****.  Sutton's treatment of Akkad was not a unique case.  Sutton fired Othman, who also had military service-connected mental health issues.  Like Akkad, Othman had no notice that he was being terminated. Like Akkad, he was escorted out of the workplace by armed guards.  Sutton expressed the same animus against another DVS veteran, was happy when another DVS employee with a military service-connected mental health disability left DVS, and told Othman that he should hire "no more troubled veterans." *Id.* ¶¶90-95.

## LEGAL STANDARD

In assessing the sufficiency of a Complaint, this Court accepts as true all of its factual allegations and draws all inferences in Akkad's favor.  *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015); *see also Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir. 2007).  Facts alleged upon information and belief, as with any factual allegations, must be accepted as true on a Rule 12(b)(6) motion.  *Arista Records LLC v. Doe*, 604 F.3d 110, 119-20 (2d Cir. 2010).

A motion to dismiss must be denied "if the complaint contains sufficient factual matter that, accepted as true, states a plausible claim for relief." *Willey v. Kirkpatrick*, 801 F.3d 51, 61 (2d Cir. 2015). Following *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565-66 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the relevant inquiry is whether the well-pleaded facts plausibly give rise to an entitlement to relief. If they do, then the motion to dismiss must be denied. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).

## ARGUMENT

### I.
### AKKAD'S USERRA CLAIM SHOULD NOT BE DISMISSED

Plaintiff is protected by USERRA, and the Complaint more than adequately states a USERRA claim. Akkad is a veteran with military service-connected PTSD. Akkad told his supervisor, Assistant Commissioner Othman, and defendant Sutton, that he suffered from PTSD because of his prior military service. Sutton told Othman that she believed Akkad was a danger because of, inter alia, his military service-connected mental health disability. The Sutton Report draws attention to Akkad's military service and reasons for separation ("Personality Disorder"), evidencing explicit bias against Akkad due to his military service-connected mental health. Defendant Sutton wanted to get rid of "troubled veterans," and did in fact get rid of other DVS employees with military service-connected mental health disabilities. Notwithstanding these detailed allegations, defendants argue for dismissal of Akkad's USERRA claims. Defendants' arguments are without merit.

**A. Defendants' discriminatory treatment of Akkad because of his military-service connected PTSD states a claim under USERRA.**

A disabled veteran, just like other veterans, is protected from discrimination on the bases set forth in 38 U.S.C. §4311(a). An adverse employment action taken against an applicant or employee because of his status as a disabled veteran violates §4311(a)'s prohibition of

discrimination based on a person's past military service.  *See, e.g.*, *Angiuoni v. Town of Billerica*, 999 F. Supp. 2d 318 (D. Mass. 2014)(evidence that employee was terminated because of his status as disabled veteran showed employee's military service was motivating factor for his discharge); *Cain v. Exxon Mobil Corporation*, 400 F. Supp. 3d 514, 530–35 (M.D. La. 2019) (allowing nondisabled veteran to proceed with USERRA claim alleging he was discriminated against based on assumption he had PTSD due to his military service and preconceived notion that persons with military-induced PTSD pose safety risk); *Kirkendall v. Dep't of the Army*, 94 M.S.P.R. 70 (M.S.P.B. August 29, 2003) ("we find that the appellant's repeated assertions that he was not selected for the position based on his status as a disabled veteran was indeed a claim that can proceed under USERRA"); *Peterson v. DOI*, 71 M.S.P.R. 227, 236 (M.S.P.B. July 19, 1996)(recognizing discriminatory harassment claim under USERRA for hostile environment claim based on his status as a disabled veteran: "he and other veterans were belittled by agency workers, … called various derogatory names such as "psycho," "baby killer," and "plate head"").

**B. Akkad has plausibly pleaded that his status as a veteran with PTSD was a substantial or motivating factor in his termination.**

The Complaint pleads ample allegations supporting Akkad's claim that his status as a veteran with PTSD was a substantial or motivating factor in his termination. The Complaint alleges direct evidence of discriminatory motive, and USERRA does not require more.  As observed in *Sheehan v. Department of Navy*, 240 F. 3d 1009 (Fed. Circ. 2001), many factors can be the basis for reasonably inferring discriminatory motivation, including, as here, "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity."  *Id.* at 1014.

***Discriminatory intent:  defendant Sutton's words and actions.***  Defendant Sutton's own words and actions manifest discriminatory intent. As alleged in the Complaint, Sutton told Othman

that plaintiff was a "danger" and a potential "terrorist" because of his military service-connected mental health disability. (¶41).   Sutton intentionally scrutinized Akkad's Military DD-214 Discharge Form, focusing, in particular, on the fact that he served for less than two years and that "personality disorder" was the stated Reason for Separation.  (¶49).  In addition to her improper direct focus on Akkad's health, Sutton's focus on Akkad's length of service is itself a violation of USERRA,  which prohibits consideration of the "timing, frequency, and duration of the person's training or service" in connection with a servicemember's USERRA rights. 38 U.S.C. §4312(h).

Defendants' argument that it was NYS DVS, not Sutton, who raised concerns about Akkad's DD 214 widely misses the mark.  Plaintiff was cleared by NYS DVS.  Sutton, not NYS DVS, took the initiative to elevate these claimed DVS "verbal disclosures" in the Sutton Report, with the goal of taking adverse action against Akkad. (¶¶48-55)

***Discriminatory intent:  defendants' treatment of other DVS employees with service-connected mental health issues.*** Defendants' treatment of other DVS employees with service-connected mental health issues further evidences discriminatory intent.   Defendant Sutton expressed animus against Othman, another DVS employee with a military service-connected mental health issue (¶¶90-92).  Sutton expressed animus against another DVS employee who was a veteran with a mental or psychological disability (¶94).  Sutton directed Othman that he should hire "no more troubled veterans." (¶95).

Akkad has thus pleaded ample evidence of discriminatory intent in defendant Sutton's own words and actions, as well as evidence of discriminatory treatment of other veterans with mental health disabilities.  These allegations are more than sufficient, at the pleading stage, to establish the plausibility of plaintiff's claims.

***Comparators are not required.***  Defendants argue, without basis, that Akkad's USERRA claim fails because he has not alleged comparators treated more favorably than he.  This argument fails, for several reasons.  First, as set forth in *Sheehan*, comparators are only one of many ways to support an inference of discriminatory intent.  Plaintiff here alleges repeated discriminatory statements by defendant Sutton, along with similar adverse treatment of other DVS employees with mental health disabilities.  Indeed, evidence of other persons who experienced similar discrimination by the employer can be admissible and probative of discrimination. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).

"One method by which a plaintiff can satisfy the third prong of this test is by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class. But this is not the only way." *George v. Leavitt*, 407 F.3d 405, 412 (2005)*; Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495–96 (D.C. Cir. 2008) (instead of showing disparate treatment an employee may attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision.)

Finally, defendants' authority in support of its "comparator" argument is not persuasive. In *Hunt v. Klein*, No. 10 cv 02778 (GBD), 2011 U.S. Dist. LEXIS 14918 (S.D.N.Y. Feb. 9, 2011), the pro se plaintiff made only conclusory assertions in support of his USERRA claim, did not reference his military service, did not plead that the individuals involved in the actions against him knew of his military service, and offered no basis to infer discriminatory motive.  In *Davis v. N.Y.C. Dep't of Corr.*, No. 17-CV-3863 (MKB), 2017 U.S. Dist. LEXIS 193578 (E.D.N.Y. Nov. 22, 2017), the pro se plaintiff similarly made only minimal mention of his military status, failed to plead even a conclusory allegation that he was terminated because of his military status, and

10

pleaded no facts supporting an inference of discriminatory motivation.  Akkad's complaint here is the exact opposite.

**C.  Defendants argue an impermissibly narrow reading of USERRA.**

Defendants' arguments, taken together, urge the court to adopt an impermissibly crabbed, narrow reading of USERRA, contrary to established doctrine and the statute itself.  USERRA requires an expansive interpretation of its protections for military servicemembers.  One of the basic purposes of USERRA is "to prohibit discrimination against persons because of their service in the uniformed services."  38 U.S.C. §4301(a)(3).

USERRA specifically prohibits an employer from denying "any benefit of employment" on account of prior service in the uniformed services.   38 U.S.C. §4311(a).   "Benefit of employment" is broadly defined to include "***any*** advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of ... an employer policy, plan, or practice ...." 38 U.S.C. § 4303(2)(emphasis supplied).. Being free from discrimination on the basis of disability is, of course, a "benefit of employment."

USERRA's legislative history reaffirms that an expansive interpretation was intended. *See, e.g.,* Statement of Congressman Montgomery, 140 Cong. Rec. H9133 (daily ed. Sept. 13, 1994) ("the intent has always been to have an expansive interpretation"); H.R. Rep. No. 65, Part 1, 103d Cong., 1st Sess. 21, 23 (1993) ("These rights are broadly defined to include all attributes of the employment relationship which are affected by the absence of a member of the uniformed services because of military service. The list of benefits is illustrative and not intended to be all inclusive. …The Committee intends that these anti-discrimination provisions be broadly construed and strictly enforced.")  *Peterson v. DOI*, 71 M.S.P.R. 227, 236 (M.S.P.B. July 19, 1996).

Defendants' cited authority is inapposite.  In *Hunt v. Klein*, 476 F. App'x 889 (2d Cir. 2012), dismissal of the pro se plaintiff's USERRA claim was upheld because plaintiff provided no supporting facts.  Similarly, in *Soules v. Connecticut,* No. 3:14-CV-1045 (VLB), 2015 U.S. Dist. LEXIS 131985 (D. Conn. Sep. 30, 2015), the pro se plaintiff's USERRA claims were dismissed because the facts, as pleaded, did not permit a plausible inference that defendants were discriminating against him due to his military service-connected disability.  Here, by marked contrast, plaintiff has pleaded ample facts demonstrating a plausible inference that defendants discriminated against him due to his military service-connected disability.   *Carroll v. Del. River Port Auth.*, 89 F. Supp. 3d 628 (D.N.J. 2015) was decided on plaintiff's motion for summary judgment, not on a motion to dismiss, and, unlike Akkad, plaintiff did not assert any claims for disability discrimination.

Defendants' multiple citations to MSPB authority warrant additional skepticism.  First, the MSPB and its Administrative Law Judges hold no special expertise or privilege in their treatment and analysis of USERRA claims.  Rather, it is the forum for federal employees asserting USERRA claims.  38 U.S.C. §4324(a).   Second, the MSPB cases cited by defendants are inapposite. *McAllister v. United States Postal Serv.*, 2020 MSPB LEXIS 2606 (M.S.P.B. June 25, 2020) is a non-precedential decision rejecting the employee's claim under 38 U.S.C. §7512, with minimal factual or legal analysis. Nothing in *McAllister* suggests that the employee pleaded explicit direct evidence of discrimination against him because of his military service-connected PTSD. *Lentz v. DOI*, 2015 MSPB LEXIS 3586 (M.S.P.B. April 27, 2015), is also a non-precedential decision, rejecting the pro se employee's claim of disability discrimination under USERRA, without any factual or legal analysis. *Marquez v. United States Postal Serv.*, 2009 MSPB LEXIS 602 (M.S.P.B. January 9, 2009) also a non-precedential decision, rejected a pro se employee's USERRA claim

12

on the basis of "no evidence or argument that his prior military service was a substantial or motivating factor in the agency's decision," with no factual or legal analysis. *Ray v. Dep't of Veterans Affairs*, 84 M.S.P.R. 108 (M.S.P.B. October 15, 1999), similarly a pro se appeal, offers no facts to explain the basis for the employee's claim of disability-based discrimination under USERRA.

Finally, defendants' cited MSPB decisions, to the extent they suggest as a matter of law that USERRA does not encompass claims like Akkad's herein, should be disregarded. They conflict with the plain language of the USERRA, its legislative intent, and abundant authority to the contrary. Indeed, the MSPB is often reversed for its crabbed analysis and application of USERRA. See, e.g., *McMillan v. DOJ*, 812 F.3d 1364 (Fed. Cir. 2016) (substantial evidence did not support MSPB's finding that petitioner failed to meet his burden under USERRA); *McGuffin v. SSA*, 942 F.3d 1099, 1108 (Fed. Cir. 2019) (same; noting that "an employer cannot discriminate against an employee for action that is intrinsically tied to his military service.")

**D. Akkad's USERRA claim is not implausible because Defendant Sutton is a veteran.**

Defendants argue that because defendant Sutton is herself a veteran, Akkad's USERRA claims are implausible. Both the Supreme Court and the Second Circuit have squarely rejected this exact argument, recognizing that members of the same protected classification can and do discriminate against each other. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78 (1998) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group."); *Feingold v. New York*, 366 F.3d 138, 155 (2d Cir.2004) ("It is no more reasonable to presume that individuals will not discriminate against practitioners of their own religious faith."); *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir. 1988) ("[t]he proposition that people in a

13

protected category cannot discriminate against their fellow class members is patently untenable"); *Lifranc v. N.Y. City Dep't of Educ.*, No. 07 Civ. 1109, 2010 U.S. Dist. LEXIS 34009, at *34 (E.D.N.Y. Apr. 6, 2010) ("Defendants fail to recognize that the Second Circuit has unequivocally stated that '[t]he proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable'").

Defendants cite no applicable authority for their "patently untenable" argument. In *Nachmany v. FXCM, Inc.*, 2020 U.S. Dist. LEXIS 7161 (S.D.N.Y. Jan. 9, 2020) Judge Batts explicitly acknowledged *Oncale*, and rejected plaintiff's sexual harassment claim not because both he and the alleged perpetrator were male, but because his pleadings were insufficient to meet the *Oncale* standard. The court allowed plaintiff leave to amend. Similarly, plaintiff in *Fleurentin v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-05004 (AMD) (RLM), 2020 U.S. Dist. LEXIS 908 (E.D.N.Y. Jan. 3, 2020) alleged that he was rejected for the position he sought due to nepotism, not because of his protected status.

The Complaint plausibly alleges that defendants had animus towards Akkad because of his service-connected mental health disability, and fired him for that reason.  Accordingly, Akkad has plausibly stated a claim under USERRA.

## II.
## AKKAD'S FREE SPEECH RETALIATION CLAIMS SHOULD NOT BE DISMISSED

Notwithstanding defendant Sutton's own words expressing animus against Akkad's protected speech, defendants argue that Akkad's free speech retaliation claims are not plausible, because Akkad does not specifically identify his protected speech, and because Sutton's expressed animus is not causally connected to his termination.  Defendants' arguments are without merit.

14

To plead a First Amendment retaliation claim, a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury. *Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist.*, 637 F. App'x 16, 18 (2d Cir. 2016). Akkad's complaint plausibly and amply alleges that he engaged in First Amendment-protected speech, that defendants' actions were motivated by his protected speech, and that his termination was causally connected to his protected speech. Defendants do not challenge, and thus evidently concede, that Akkad's speech was on a matter of public concern, and that Akkad spoke as a citizen, and not solely as a DVS employee. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). (Def. Mem. at 19).

## A. The Complaint plausibly alleges that Akkad engaged in protected speech.

Akkad has plausibly pleaded that he engaged in protected speech. The Complaint describes the content of his social media posts by the topics they cover: Black Lives Matter and other contemporary social justice concerns. The Complaint alleges that he was warned by one of his supervisors that an issue had been raised about his Black Lives Matter activism. The Complaint describes plaintiff's protected speech with defendants' own words, as "social media posts of a provocative nature." As plausibly pleaded in the Complaint, defendants' own words and actions demonstrate that their intent to punish Akkad for his protected speech. These facts – an admission of retaliatory intent based on the content of plaintiff's speech -- are more than sufficient to plausibly allege that Akkad engaged in protected activity. *Dotson v. Farrugia*, 2012 U.S. Dist. LEXIS 41195 at *15 (S.D.N.Y. Mar. 26, 2012).

No authority requires that plaintiff plead the specific content of social media posts or the specific statements that triggered defendants' retaliatory response. Defendants' cited authority is

inapposite.  The court's dismissal of plaintiff's speech claims in  *Solomon v. De Blasio*, No. 18 CV 0005 (MKB), 2018 U.S. Dist. LEXIS 213929 (E.D.N.Y. Dec. 18, 2018), turned on whether the plaintiff's complaints were on matters of public concern – not on whether they were sufficiently detailed.  Unlike plaintiffs in *Jeune v. Crew*, No. 16-CV-1107 (MKB), 2017 U.S. Dist. LEXIS 161739 (E.D.N.Y. Sep. 29, 2017), Akkad's protected speech activity is substantiated by the Complaint's direct evidence of defendants' statements.  Discovery will allow plaintiff to identify the specific posts that triggered defendants' retaliatory response.

## B. The Complaint plausibly alleges a causal connection between Akkad's protected speech and his termination.

The Complaint pleads substantial allegations that defendants' decision to terminate Akkad is causally connected to Akkad's protected speech.  In August 2016, Sutton documented her opposition to Akkad's protected speech.  In September 2016, Sutton advocated for taking adverse action against Akkad because of his protected speech.  After that, notwithstanding Hayes' admonishment, Sutton continued to pursue Akkad's political social media posts.  Several months after the Sutton Meeting, Sutton directed Jason Parker, then Director of Administration for DVS, to make a report to NYPD regarding Akkad's political social media posts. Compl. ¶61.  Finally, in early June 2017, defendants fired plaintiff, a highly performing, union-protected employee, with no warning, no explanation, and no documentation of any performance issues.

"A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).  Akkad's Complaint establishes causation both through allegations of direct retaliatory animus, demonstrated by defendants' own words and actions, and by Akkad's abrupt and groundless termination, following just months after the Sutton Report, the Sutton Meeting, and Sutton's continued pursuit of Akkad for his social

media posts.   These allegations, taken together, provide a compelling inference of causal connection.

Moreover, even without this additional evidence of animus, the temporal proximity here is sufficient to plausibly plead causation.   Defendants waited for an opportune time to exact retaliation.   Defendants fired Akkad right after Fleet Week, a time of intense responsibilities for Akkad and others at DVS, prompted by Akkad's taking a few days off for his mental and physical health.   Intent to retaliate may be shown when a defendant waits for an opportune time to extract retaliation, in order to have a ready explanation for its actions.   *Espinal v. Goord*, 558 F.3d 119, 129-30 (2d Cir. 2009).

The Second Circuit has cautioned against applying any "bright line" test to assess causation via a temporal connection; courts are to "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013).   The context here makes clear the permissible inference that can be drawn from plaintiff's protected First Amendment speech, and his termination.

Defendants' authorities to the contrary are without basis. In *Brown v. City of N.Y.*, 622 F. App'x 19 (2d Cir. 2015), and *Williams v. City of N.Y.*, 2012 U.S. Dist. LEXIS 112482 (S.D.N.Y. Aug. 8, 2012), the plaintiff's First Amendment retaliation claims were dismissed because the plaintiff pleaded only temporal proximity, without any other factual allegations to support their retaliation claims.   In *Ingram v. Nassau Health Care Corp.*, No. 17-CV-05556 (JMA)(SIL), 2020 U.S. Dist. LEXIS 26070 (E.D.N.Y. Feb. 13, 2020), the pro se plaintiff, unlike Akkad here, did not allege any specific retaliatory or discriminatory comments about his protected activity.

**C. Akkad's claim under Art. I §8 of the New York State Constitution should not be dismissed.**

As courts in this circuit have recognized, the New York State Constitution may provide a parallel – and even broader -- basis for a plaintiff's protected speech claim. *See, e.g., Rotundo v. Vill. of Yorkville*, No. 6:09-CV-1262, 2011 U.S. Dist. LEXIS 21663 at *14. (N.D.N.Y. Mar. 4, 2011). Moreover, "the NYS Constitution generally affords greater protection than the United States Constitution with regard to speech, *see O'Neill v. Oakgrove Constr., Inc*., 71 N.Y.2d 521, 528-29 n.3, 523 N.E.2d 277, 528 N.Y.S.2d 1 (1988)," and "claims of free speech retaliation under Article I, section 8 of the New York State Constitution are governed by the same principles that apply under the First Amendment to the United States Constitution." *Dotson v. Farrugia*, 2012 U.S. Dist. LEXIS 41195 at *23 and FN 8 (S.D.N.Y. Mar. 26, 2012). These authorities recognized that a First Amendment claim under Section 1983 does not preclude a parallel claim under the New York State Constitution, and defendants' argument to the contrary (Def. Mem at 18) is without legal basis and should be rejected.

**D. Akkad has plausibly pleaded municipal liability.**

Akkad's Section 1983 claim against defendant City meets the requirements of *Monell v. New York City Dept. of Soc. Servs*, 436 U.S. 658 (1978). "[T]he act of an official with final decision-making authority, if it wrongfully causes the plaintiff'[s] constitutional injury, may be treated as the official act of the municipality, resulting in Section 1983 liability of the municipality. *Walton v. Safir*, 122 F. Supp. 2d 466, 477 (S.D.N.Y. 2000) (*citing* City of *St. Louis v. Praprotnik*, 485 U.S. 112, 123, (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

Akkad's complaint pleads direct evidence of retaliatory intent by defendant Sutton, the Commissioner of DVS, a New York City agency. Sutton said she wanted to fire Akkad because of his political views. She tried to get him disciplined for his political views. When told she could

not, she continued to pursue Akkad for his political social media posts.  And then, without any cause or reason, DVS fired Akkad. While discovery may provide additional information, these allegations are sufficient, for pleading purposes, to plausibly allege that Akkad's termination was an official act of the City of New York, resulting in municipal liability for the City.  Accordingly, Akkad has sufficiently alleged a claim against the City under Section 1983.

### III.
### AKKAD'S DISABILITY AND RELIGIOUS DISCRIMINATION CLAIMS UNDER THE NYCHRL SHOULD NOT BE DISMISSED

Akkad's Complaint pleads ample allegations of defendants' explicit direct evidence of religious and disability discrimination against him: defendant Sutton's repeated hostile references to plaintiff's disability and his religion, followed by defendants' baseless termination of plaintiff while he was taking a few days off for mental and physical health reasons, and defendants' similar treatment of other similarly disabled veterans. Defendants nevertheless claim dismissal of Akkad's NYCHRL claims are warranted because the complaint does not identify comparators who were treated more favorably than he.  Defendants also urge the court to disregard defendant Sutton's explicit biased statements against plaintiff as "stray remarks," and ask the court to accept the inherently implausible argument that they had nothing to do with plaintiff's baseless termination. These arguments are without merit, and should be rejected.

### A.  Akkad has plausibly pleaded religious and disability discrimination.

Akkad is Muslim and has the military-service connected disability of PTSD.  He was eminently qualified for the position he held at DVS.  He suffered the adverse employment action of termination, and the inference of discriminatory motive is evidenced by the direct evidence of defendant  Sutton's hostile and discriminatory statements about his religion and disability; the

direct evidence of her discriminatory statements about other disabled employees; and the circumstances of plaintiff's termination, lacking any performance-related reason.  Akkad has thus plausibly pleaded his prima facie case of discrimination. His allegations plausibly support far more than "a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 313 (2d Cir. 2015).

The NYCHRL uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards. As recently summarized in *Farmer v. Shake Shack Enters., LLC*, 2020 U.S. Dist. LEXIS 128272, at *23-24 (S.D.N.Y. July 21, 2020): "Claims brought under the NYCHRL are analyzed using the same framework as Title VII and NYSHRL claims, 'but must be viewed independently from and more liberally than their federal and state counterparts.' (quoting *Loeffler v. Staten Island Univ. Hosp*., 582 F.3d 268, 278 (2d Cir. 2009)). In particular, to establish a … discrimination claim under the NYCHRL, "the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent."" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)(some internal citations omitted).

**B. Akkad has plausibly pleaded discriminatory motive.**

The Complaint alleges direct evidence of defendant Sutton's bias against plaintiff because of his religion and his disability.  In addition, the Complaint alleges that defendants also discriminated against and terminated other disabled DVS employees, establishing a pattern of discriminatory treatment.  *See* Complaint at ¶¶90-95.  Defendants ask the court to ignore these allegations, instead arguing, without basis, that more favorably treated comparators are a required element of plaintiff's pleading, and that Sutton's explicit biased statements against plaintiff are only "stray remarks."  This is not the law.

***Akkad is not required to plead favorably treated comparators.***   Defendants' argument suggests that an employer with a pattern of terminating disabled employees, and who made hostile negative statements about plaintiff's Muslim faith, as here, can escape liability if plaintiff does not, at the pleading stage, identify more favorably treated comparators.   Rather, pleading such comparators is only one of many ways to establish an inference of discriminatory motive.   As the Second Circuit concluded in *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir. 2001), "a showing of disparate treatment, while a common and especially effective method of establishing the inference of discriminatory intent necessary to complete the *prima facie* case, is only one way to discharge that burden."   Rather, "the inference of discriminatory intent could be drawn in several circumstances including, but not limited to: the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

Consistent with *Abdu-Brisson,* Akkad has pleaded defendant Sutton's invidious and degrading criticism of plaintiff's religion and disability.   He has pleaded Sutton's invidious statements about others in Akkad's protected group.   He has pleaded the sequence of events leading to his discharge. Sutton "wanted to find a reason to terminate Akkad because of his mental health disability and his political and/or religious views."   Complaint ¶45. She succeeded, evidenced by DVS's baseless termination of Akkad. Like plaintiff in *Abdu-Brisson,* plaintiff has more than met his "de minimis burden of raising an inference of discriminatory intent" by defendants. *Id*. at 468.

21

Defendants' cited authority regarding comparators is not persuasive.  *Chin v. N.Y.C. Hous. Auth.*, 106 A.D.3d 443, 965 N.Y.S.2d 42 (1st Dept. 2013) was decided on a full record, not on a motion to dismiss the pleadings.  The plaintiff in *Thomas v. Mintz*, 182 A.D.3d 490, 122 N.Y.S.3d 21 (1st Dept. 2020), unlike Akkad here, pleaded no allegations to allow a court to draw an inference of discrimination.

***Sutton's discriminatory statements were not "stray remarks."*** Defendants also urge the court to disregard as "stray remarks" defendant Sutton's repeated discriminatory statements about plaintiff.  The complaint alleges that Sutton called Akkad a "danger" because of his mental health disability and Muslim faith.  She called him as a potential "terrorist."  She noticed that Akkad was "growing his beard out" (an indicia of his Muslim faith) and said that Akkad "looks like an ISIS member."  She told Othman, plaintiff's supervisor, that she "wanted to find a reason to terminate Akkad because of his mental health disability and political and/or religious views."  As pleaded in the complaint, defendant Sutton's statements about Akkad were far from "stray."

"While it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)(internal citations omitted). Courts are to consider "four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).  While we caution that none of these factors should be regarded as dispositive, we think this framework

will often provide a useful approach to the admission or exclusion of remarks not directly related to the adverse action against the plaintiff, and employ it here." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010)(internal citations omitted).

Defendant Sutton's statements meet each of these factors.  Sutton, as DVS Commissioner, was evidently a decision-maker, and defendants admit as much. Sutton told Akkad's supervisor she wanted to fire Akkad, because of his religion and disability.  With Sutton's explicit derogatory statements about Akkad's disability and religion, a reasonable juror is highly likely to view her statements about Akkad as discriminatory.  And the context is Sutton's stated desire to fire Akkad, Akkad's groundless firing, and the firing of others similarly situated to him.

**Sutton's discriminatory statements led to Akkad's termination.**  Defendants claim no nexus between Sutton's discriminatory statements and Akkad's termination, but the nexus is evident in the allegations detailing what Sutton said to Othman, and what followed.  As discussed *supra* at Point I, a series of events links Sutton's invidious statements in the Sutton Report to Akkad's termination.  The Complaint establishes causation both through allegations of direct retaliatory animus in Sutton's own words and actions, and by Akkad's abrupt and groundless termination, following just months after the Sutton Meeting.  These allegations, taken together, provide a compelling inference of causal connection.

Moreover, even without this substantial evidence of continuing discriminatory animus, the temporal proximity here is sufficient to plausibly plead causation.  Defendants fired Akkad right after Fleet Week, a time of intense responsibilities for Akkad and others at DVS, prompted by Akkad's taking a few days off for his mental and physical health.   Intent to retaliate may be shown when a defendant waits for an opportune time to extract retaliation, to have a ready explanation for its actions.  *Espinal v. Goord*, 558 F.3d 119, 129-30 (2d Cir. 2009).

The Second Circuit has cautioned against applying any "bright line" test to assess causation via a temporal connection; courts are to "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013).  The context here makes clear the permissible inference that can be drawn that plaintiff's status disability and his religion were causally connected to his termination.

**Akkad's promotion does not undermine plausibility.** Defendants argue that Akkad's promotion undermines the plausibility of his Complaint, but their cited authority is not persuasive. In *Ingram v. Nassau Health Care Corp.*, No. 17-CV-05556 (JMA)(SIL), 2020 U.S. Dist. LEXIS 26070 (E.D.N.Y. Feb. 13, 2020), plaintiff's pro se complaint lacked any indicia that his disability status was a liability.  By contrast, Akkad pleads substantial indicia that defendants saw his disability and religion as a liability.  The significance (or not) of Akkad's promotion with regard to defendants' liability for discrimination and retaliation is a question for the jury, and not a basis for dismissal on the pleadings.

**Akkad's pleadings "on information and belief" do not undermine plausibility**. Defendants critique of the plausibility of Akkad's pleadings on the grounds that some are alleged "on information and belief."  (Def. Mem. at 13).  This argument misstates the law. As the Second Circuit ruled in *Arista Records*, "the *Twombly* plausibility standard, which applies to all civil actions,  does not prevent a plaintiff from pleading facts alleged 'upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible. … asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will

reveal evidence of illegality." *Arista Records,* 604 F.3d at 120. (internal citations and quotations omitted.)  Akkad has pleaded substantial evidence of illegality, and his Complaint has alleged enough facts to raise a reasonable expectation that discovery will reveal even more evidence of illegality. *Hernandez v. City of N.Y.*, 2019 U.S. Dist. LEXIS 96187 (S.D.N.Y. June 7, 2019) is not to the contrary, because Akkad's pleadings on information and belief were founded on and supported by other facts alleged in his Complaint.

  ***Defendants' other cited authority is unavailing.***  In *Martin v. City Univ. of N.Y.*, 2018 U.S. Dist. LEXIS 208685 (S.D.N.Y. Dec. 11, 2018), the pro se plaintiff alleged discriminatory statements that were not made by decision-makers, or, for the most part, by individuals who had any role in the decision-making process. And, unlike Akkad here, they were not made in the context of the decision-making process.  Moreover, the pro se plaintiff did not allege any other evidence of animus. Similarly, in *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431 (S.D.N.Y. 2015), plaintiff's alleged discriminatory statements were not related to the decision-making process.  Indeed, Mesias, unlike Akkad, was given a reason for her termination.  Moreover, *Mesias* did not consider plaintiff's claims under the NYCHRL. In *Massaro v. Dep't of Educ. of the City of N.Y.*, 121 A.D.3d 569, 993 N.Y.S.2d 905 (1st Dept. 2014), the summary description of Massaro's claim does not allow a reader to determine the why her allegations regarding causation were deemed conclusory. In *Mauro v. N.Y.C. Dep't of Educ.*, No. 19-CV-04372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 76379 (S.D.N.Y. Apr. 29, 2020), *adopted* 2020 U.S. Dist. LEXIS 120830 (S.D.N.Y. July 9, 2020), the pro se plaintiff's allegations did not include any specific mention of his age by the decision-maker. Akkad has pleaded defendant Sutton's explicit derogatory statements about his religion and disability, and made specific factual allegations of discrimination.  In *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197 (E.D.N.Y. 2017),

Marquez's pro se complaint did not connect defendants' denial of medical leave to his complaint of disability discrimination.  Akkad, by contrast, pleads that he was denied leave and fired because of defendants' stated animus towards him as, *inter alia*, a Muslim veteran with PTSD.

With its detailed recitation of direct evidence of discrimination, the adverse treatment of other veterans with PTSD, and the absence of any reason to support his termination, Akkad has pleaded far more than a "false syllogism" of discrimination.  Plaintiff's disability and religious discrimination claims should proceed to discovery and to trial.

## IV.
## AKKAD'S ALLEGATIONS ARE NOT TIME-BARRED

Akkad was terminated on June 2, 2017, and filed this action on May 31, 2020.  Thus, his claims under 42 U.S.C. §1983 and the NYCHRL, and his USERRA claims, are all timely.  Defendants argue, without basis, that plaintiff's allegations of events preceding May 31, 2017 are time barred with respect to his §1983 and NYSCHR claims.  This is not the law, and defendants cite no authority for this proposition.  Allegations regarding events outside the limitations period are relevant background evidence. A statute of limitations cannot bar an employee from using prior acts of discrimination and retaliation as background evidence in support of his timely claim.  "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence to support a timely claim." *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002).

**CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants'

motion to dismiss in its entirety and allow plaintiff's claims to proceed to discovery and to trial.

Should the Court grant defendants' motion in whole or in part, plaintiff respectfully requests leave

to file an amended pleading.

Dated:         New York, New York
               September 18, 2020


               LAW OFFICES OF DEBORAH H. KARPATKIN
               Attorney for Plaintiff Achmat Akkad
               99 Park Avenue, Suite 2600
               New York, NY 10016
               (646) 865-9930
               deborah.karpatkin@karpatkinlaw.com



               By: _____
                      Deborah H. Karpatkin