**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X

ACHMAT AKKAD,

                      Plaintiff,

       -against-

THE  CITY  OF  NEW  YORK,  and  FORMER
COMMISSIONER LOREE SUTTON, in her individual
capacity,

                  Defendants.

------------------------------------------------------------------ X

Civ. 20 CV 4152 (AKH)(GWG)


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AN AMENDED COMPLAINT**


**LAW OFFICES OF**
**DEBORAH H. KARPATKIN**
**99 Park Avenue, PH/ 26th Fl.**
**New York, New York 10016**
**(646) 865-9930**


*Attorney for Plaintiff Achmat Akkad*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES        iii

PRELIMINARY STATEMENT        1

BRIEF SUMMARY OF FACTS        2

PROCEEDINGS TO DATE        3

ARGUMENT        5

I.    THE COURT SHOULD GRANT PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT    5

    A.    *Kopchik* and *Loreley* direct that leave to replead should be granted.    5

    B.    Amendment is not futile.    6

    C.    The Order is not "with prejudice."    16

    D.    "Law of the Case" doctrine does not bar Rule 15(b) amendment.    16

II.    RECONSIDERATION PURSUANT TO LOCAL RULE 6.3 IS APPROPRIATE (Clarification Requested)    17

CONCLUSION        18

# TABLE OF AUTHORITIES

## Cases

*Abdu-Brisson v. Delta Air Lines*, 239 F. 3d 456, 468. (2nd Cir. 2001)........................................................15

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118-120 (2d Cir. 2004); .....................8

*Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014).......................................................................................7

*Carroll v. Del. River Port Auth.*, 89 F. Supp. 3d 628 (D.N.J. 2015) ...........................................................11

*Conn. v. Teal,* 457 U.S. 440, 455 (1982). .............................................................................................8

*Connick v. Myers*, 462 U.S. (1983)......................................................................................................13

*Cooks v. Contra Costa Cty.*, No. 20-cv-02695-PJH, 2020 U.S. Dist. LEXIS 140959 (N.D. Cal. Aug. 6, 2020) .......................................................................................................................................11

*De Johnson v. Holder,* 564 F. 3d 95, 99 (2d Cir. 2002)...........................................................................17

*Foman v. Davis*, 371 U.S. 178, 182 (1962). ...........................................................................................6

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)......................................................................................13, 14

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109-10 (2d Cir. 2010) .................................................8

*Holmes v. DOJ*, 498 F. App'x 993 (Fed. Cir. 2013).................................................................................11

*Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1034 (5th Cir. 1980) ..................................8

*Kopchik v. Town of E. Fishkill*, 759 Fed. Appx. 31, 38, 2018 U.S. Dist. LEXIS 36443 (2nd Cir. 2018)..2, 5

*Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994). .....................................................................8

*Loreley Fin. Jersey No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F. 3d 160, 189-91 (2d Cir. 2015)...........2, 5

*Montero v. Teva Pharm. USA Inc.*, 2019 U.S. Dist. LEXIS 209937 (S.D.N.Y. Dec. 4, 2019) ....................7

*Patane v. Clark,* 508 F. 3d 106, FN 6 (2d Circ. 2007).............................................................................7

*Peterson v. DOI*, 71 M.S.P.R. 227, 236 (M.S.P.B. July 19, 1996). ...........................................................9

*Phillips v. Martin Marietta Corp.*, 400 U.S. 542, (1971): ..........................................................8

*Shaw v. Empire Stock Transfer Inc.*, 381 F. Supp. 3d 286, 293 (S.D.N.Y. 2019) ..........................7

*Soules v. Connecticut,* No. 3:14-CV-1045 (VLB), 2015 U.S. Dist. LEXIS 131985 (D. Conn. Sep. 30, 2015), ............................................................................................................................................11

*Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) ...................................................13

*Velazquez-Garcia v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 20 (1st Cir. 2007)..................8, 11

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 723 F. App'x 20, 21 (2d Cir. 2018)..........13

*Williams v. Citigroup, Inc.*, 659 F.3d 208 (2d Cir. 2011) ............................................................6

**Statutes**

NYC Human Rights Law, N.Y.C. Admin. Code §8-107 et seq ......................................................1

USERRA...............................................................................................................*passim*

**Other Authorities**

https://www.eeoc.gov/laws/guidance/eeoc-efforts-veterans-disabilities (last visited 12/11/2020). ...........12

**Rules**

Local Rule 6.3 ....................................................................................................................1, 17

Rule 15(a)(2), Fed. R. Civ. P .......................................................................................*passim*

Rule 59(e), Fed. R. Civ. P. ..............................................................................................17

Rule 60(b), Fed. R. Civ. P.................................................................................................17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
ACHMAT AKKAD,

                     Plaintiff,

      -against-

THE CITY OF NEW YORK, and FORMER
COMMISSIONER LOREE SUTTON, in her individual
capacity,
                                         Civ. 20 CV 4152 (AKH)(GWG)

                     Defendants.
-------------------------------------------------------------------- X

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AN AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Pursuant to Local Rule 6.3 and FRCP 15(a)(2), plaintiff seeks leave to file an amended complaint to address the pleading deficiencies identified in the Court's 10/19/2020 Order (ECF 20) regarding plaintiff's claims under USERRA, and his free speech claims. Responsive to the Order, Plaintiff's Proposed Amended Complaint ("PAC") amplifies the connection between plaintiff's veteran status and his termination and identifies specific items of speech connected with his termination.  Plaintiff also asks the court to clarify the status of his disability discrimination claim, which the Order did not address.   Notwithstanding their opposition to the motion, defendants also seek clarification of the Order with regard to plaintiff's separate claim for discrimination on the basis of disability under the NYC Human Rights Law, N.Y.C. Admin. Code §8-107 et seq.(Def. Mem. at FN 2).

Defendants oppose plaintiff's motion on grounds totally lacking legal merit.  Defendants' opposition contradicts FRCP 15(a)(2)'s express instruction that leave to amend "should be freely given," and well-established Second Circuit authority that plaintiff should be afforded the

opportunity to address deficiencies identified by the court where, as here, a court grants a motion to dismiss, in whole or in part. *Kopchik v. Town of E. Fishkill*, 759 Fed. Appx. 31, 38, 2018 U.S. Dist. LEXIS 36443 (2nd Cir. 2018); *Loreley Fin. Jersey No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F. 3d 160, 189-91 (2d Cir. 2015).   Defendants also mischaracterize the Order, claiming, erroneously, that the Order is "final" and dismissed some of plaintiff's claims "with prejudice."

## BRIEF SUMMARY OF FACTS

For a full statement of the facts, plaintiff respectfully refers the court to the Proposed Amended Complaint (Exhibit A, ECF 22-1).  Briefly: plaintiff Achmat Akkad, who is Black, Muslim, and a veteran with a diagnosis of PTSD, was employed by the NYC Department of Veteran's Services ("DVS"), led then by defendant Former Commissioner Lore Sutton ("Sutton"). Akkad is also a social activist, visible in his personal social media in support of Black Lives Matter and other social justice causes, often on controversial issues.

*The USERRA Claim and the Disability Discrimination Claim.* The PAC amplifies Akkad's USERRA allegations, with additional facts connecting Akkad's military service to his termination. As set forth in the PAC, defendants discriminated against Akkad because he was a veteran with a mental health disability – a form of intersectional or dual status discrimination.   Sutton and DVS violated USERRA by discriminating against a subset of persons protected by USERRA:  veterans with a mental health disability.  Sutton's discriminatory intent manifested in her animus against veterans with mental health disabilities like Akkad.  She launched a "strong veteran" initiative at DVS, to counteract what she believed was a media focus on "broken" and "damaged" veterans, i.e., veterans like Akkad, with PTSD mental health disabilities.

Akkad's military service – in particular, that he is a veteran with a mental health disability – links directly to his termination.  Notably, in the weeks immediately before DVS fired him, DVS

management saw that Akkad was a "broken" or "damaged" veteran, because, as he explained to his supervisors, he needed to take some time off because he had some "major issues … (physically and mentally)." DVS summarily fired Akkad, without any notice or warning, or even explanation, when he returned to work a few days later, on June 2, 2017. Sutton succeeded in getting rid of Akkad, a "broken" or "damaged" veteran, as she did with others like him.

*Free speech claims.*   The PAC amplifies Akkad's free speech claims, with detailed allegations connecting Akkad's termination to his controversial personal political speech, which differed deeply from Sutton's views. The PAC identifies specific items of Akkad's speech, expressed at particular times and places, connected with Akkad's termination.   The PAC asserts that both Sutton and her second in command, DVS deputy director Jeffrey Roth, held and expressed animus to Akkad, because their political views were very different from his.   The PAC describes Akkad's protected speech in the period immediately before DVS terminated him, including his personal social media posts on controversial subjects such as racism, Islamic beliefs and values, New York politics, American foreign policy, Palestinian rights, indigenous rights, and international human rights.   The PAC asserts that in the period immediately before DVS fired Akkad, DVS Deputy Commissioner Roth, who was familiar with Akkad's social media posts and political views, was persistent in engaging with Akkad to dispute Akkad's views on Palestinian and Muslim rights.   The PAC asserts that in the period immediately before DVS fired Akkad, defendants caused the FBI to investigate Akkad because of his controversial political views. Nothing came of the investigation, except that on June 2, 2017, DVS fired Akkad.

## PROCEEDINGS TO DATE

Plaintiff filed his Complaint on May 31, 2020 (ECF 1).  Defendants moved to dismiss the Complaint on August 6, 2020, which plaintiff opposed. (ECF 11-12, 17-18). By Order dated

October 8, 2020 (ECF 19), the Court directed the parties to appear for a telephonic oral argument on January 29, 2021.

By Order dated October 19, 2020 (ECF 20), before holding any oral argument, the Court denied defendants' motion as to timeliness, and as to plaintiff's discrimination claims (clearly with respect to religious discrimination, less clearly with respect to disability discrimination).  The Court granted defendants' motion as to plaintiff's USERRA claims, because "there is nothing about his military service that is connected with his termination," and as to plaintiff's free speech claims, because "there is no item of speech, expressed at any particular ti[m]e and place, that is connected with his termination."  The Order directed plaintiff to "amend his complaint, conforming to these rulings, by November 13, 2020;" directed defendants to file their Answer by December 2, 2020; and scheduled an Initial Case Management Conference for December 10, 2020.

On November 2, 2020, plaintiff moved for reconsideration and for leave to file an amended complaint.  (ECF 22, 23).  Plaintiff's proposed Amended Complaint included substantial additional allegations addressing the connection of plaintiff's military service to his termination supporting his USERRA claim, and substantial additional allegations regarding specific speech, expressed at particular times and places, connected with his termination, supporting his free speech claims.

By Order dated November 13, 2020 (ECF 25), the Court extended the time for plaintiff to file an amended complaint until after the resolution of this motion.  By Order dated December 8, 2020 (ECF 28), the court adjourned the December 10th conference, to be rescheduled once this motion for reconsideration is fully briefed.

## ARGUMENT
## I.
## THE COURT SHOULD GRANT PLAINTIFF
## LEAVE TO FILE AN AMENDED COMPLAINT

Notwithstanding the liberal purpose of Rule 15(a)(2), Fed. R. Civ. P, endorsed by ample case law, defendants argue that leave to amend should be denied.  Defendants argue, without basis, that amendment would be futile. Defendants incorrectly apply clear Second Circuit authority, wrongly argue that the court's determination is "law of the case," and improperly characterize the court's ruling as "with prejudice."

**A.  *Kopchik* and *Loreley* direct that leave to replead should be granted.**

Defendants' arguments ignore the Second Circuit's clear direction: a plaintiff should be afforded the opportunity to replead after, as here, a court grants a motion to dismiss, in whole or in part, to address deficiencies identified by the Court.  *Kopchik v. Town of E. Fishkill*, 759 Fed. Appx. 31, 38, 2018 U.S. Dist. LEXIS 36443 (2nd Cir. 2018); *Loreley Fin. Jersey No. 3 Ltd. v. Wells Fargo Sec*., LLC, 797 F. 3d 160, 189-91 (2d Cir. 2015).  In *Kopchik*, the Second Circuit made plain that "there is no obligation on a plaintiff to expend time and resources to amend a complaint before knowing whether the court will find it insufficient, and if so in what ways."  The Second Circuit acknowledged the utility of amending a complaint *after* the court's ruling on a motion to dismiss: "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies. *Kopchik*, 759 Fed. Appx. at 38, citing *Loreley*, 797 F. 3d at 190.

Defendants try to distinguish *Kopchik* and *Loreley* on the thin argument the Court here did not issue plaintiff an ultimatum to amend before filing.  If anything, that argument furthers plaintiff's position.  In *Kopchik*, and *Loreley*, plaintiff at least had an "ultimatum" – plaintiff here did not have even that.

**B. Amendment is not futile.**

As ample authority has long made clear, Rule 15(a)(2) requires the court to: "freely give leave [to amend] when justice so requires. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Given the early stage of the case, defendants' only argument is futility, and that argument lacks any merit. Defendants' futility argument starts with a faulty premise: that the court has already deemed plaintiff's proposed amended complaint futile.[1] The Order does not so state. Rather, the Order is focused on the pleaded facts: whether plaintiff sufficiently pleaded that "his military service is connected with his termination" and whether there was any "item of speech, expressed at any particular ti[m]e and place, that is connected with his termination." (Order, ECF 20). Responsive to the Court's Order, plaintiff's PAC adds substantial detail and additional facts to plaintiff's USERRA and free speech claims.

Defendants' authority does not support their arguments. *Williams v. Citigroup, Inc.*, 659 F.3d 208 (2d Cir. 2011) reversed the district court's denial of leave to amend and remanded to the

---

[1] Def. Mem. at 5.

district court to address futility.  In so doing, the court concluded that the "liberal spirit" of Rule 15 does not "necessarily dissolve as soon as final judgment is entered." *Id.* at 214.  Indeed, citing *Foman*, *Williams* ruled that an "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*  *Patane v. Clark,* 508 F. 3d 106, FN 6 (2d Circ. 2007) turned on whether plaintiff had sufficiently alleged materially adverse employment actions and does not explain the nature of Patane's proposed amendments.

Defendants' cited authorities find futility based on invalid legal theories, not at issue here. In *Montero v. Teva Pharm. USA Inc.*, 2019 U.S. Dist. LEXIS 209937 (S.D.N.Y. Dec. 4, 2019), the court denied leave to amend based on legal futility: the plaintiff's theory of "innovator liability" had been "consistently rejected" under New York law.  Similarly, in *Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014), denial of leave to replead was futile because "no changes to the complaint would undermine the existence of arguable probable cause." Moreover, unlike here, where plaintiff proposes an amended complaint with extensive additional facts, the Circuit noted "no facts" identified by plaintiff to change its ruling. *Id.* at 86. In *Shaw v. Empire Stock Transfer Inc.*, 381 F. Supp. 3d 286, 293 (S.D.N.Y. 2019), this court, after granting defendant's motion to dismiss, *granted* plaintiff leave to amend except for those claims that were futile as a matter of law because they were duplicative.  Defendants make no such argument here.

### 1. *Plaintiff's proposed amended USERRA claim is not futile.*

Defendants discriminated against plaintiff because he was a veteran with a mental health disability, a form of dual status or intersectional discrimination. Akkad's USERRA claim is based on the "intersection" or "dual status" of Akkad as a veteran with a mental health disability.

In support of plaintiff's USERRA claim, the PAC adds substantial new allegations of defendants' bias against Akkad, a veteran with PTSD, because he was a "broken" or "damaged" veteran with "issues," as compared to the preferred, "strong" veterans – those without mental health disabilities.  (PAC ¶¶ 43-49.)   The PAC plausibly alleges defendants' bias against "damaged" veterans with PTSD like Akkad, and plausibly alleges that defendants acted on their bias by terminating Akkad right after he took a few days leave for "major issues … (physically and mentally)." Bias is clear, and causation is clear. Seen through this dual status lens, plaintiff's military service was explicitly and plausibly connected with his termination.

The Second Circuit has long acknowledged the reality of dual status or intersectional discrimination in the workplace.  As *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109-10 (2d Cir. 2010) explains, applying *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, (1971):

> a plaintiff's discrimination claims may not be defeated on a motion for summary judgment based merely on the fact that certain members of a protected class are not subject to discrimination, while another subset is discriminated against based on a protected characteristic shared by both subsets. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118-120 (2d Cir. 2004); *see also Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1034 (5th Cir. 1980) (explaining the history of "plus" claims and recognizing a claim for discrimination against black females)…[W]here two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components. *See Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994).

Thus, following the teaching of *Phillips* and *Gorzynski*, defendants cannot avoid a USERRA claim premised on the facts here: discrimination against a subset of veterans with the additional protected characteristic of mental health disability.  Under USERRA, as with other employment discrimination claims, the failure to treat all members of a class with similar discriminatory animus does not preclude a claim by a member of that class who is so treated. *Velazquez-Garcia v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 20 (1st Cir. 2007); *Conn. v. Teal*, 457 U.S. 440, 455 (1982).

When two bases of discrimination exist – here, veteran status and mental health disability – "the two grounds cannot be neatly reduced to their distinct components," because "the attempt to bisect a person's identity at the intersection of [two protected classes] often distorts or ignores the particular nature of their experiences, including a specific set up stereotypes and assumptions not shared by all persons of that [particular protected class]." *Gorzynski,* 596 F.3d at 110.  This analysis is consistent with USERRA's liberal standards, finding a violation when a service in the armed forces is "a motivating factor" in the employer's action.  Here, Akkad's status as a veteran with PTSD, whose PTSD required him to take a few days leave just before he was fired, is a highly plausible "motivating factor" for defendants' actions.   Moreover, USERRA's legislative history mandates that its "anti-discrimination provisions be broadly construed and strictly enforced." *Peterson v. DOI*, 71 M.S.P.R. 227, 236 (M.S.P.B. July 19, 1996).

The PAC thus plausibly links defendants' bias against "broken" and "damaged" veterans with "issues" (like plaintiff), to defendants' decision to terminate plaintiff, days after he informed his supervisor that he was experiencing "major issues… (physically and mentally)" and requested time off. (PAC ¶¶ 126-149).  Further linkage is established by defendants' treatment of other DVS employees who were veterans with mental health disabilities. (PAC ¶¶164-169).  These amplified pleadings substantiate the connection of plaintiff's military service to defendants' decision to terminate plaintiff, in violation of USERRA, addressing the Order's concern that plaintiff's military service was not "connected with his termination."

The PAC offers these detailed allegations to support plaintiff's dual status USERRA claim based on his status as a veteran with a mental health disability:

- Akkad is an honorably discharged Air Force veteran, with military service-connected PTSD.  (¶¶14-18).

- Sutton critiqued DVS's constituency of "so many broken veterans" – i.e., veterans with mental health disabilities – and wanted DVS to focus on "strong veterans," not "broken veterans." (¶¶ 44-49).

- Sutton and other senior DVS personnel knew that Akkad suffered from PTSD because of his prior military service. (¶¶50-52).

- Sutton believed Akkad was a "danger" as a "potential terrorist" because of, inter alia, his status as a veteran with PTSD. (¶¶53).

- Sutton scrutinized and critiqued Akkad's military discharge papers, focusing on the reason for discharge (personality disorder) which related to his LGBTQ status and PTSD. (¶¶67-71).

- Right before he was terminated, Akkad's PTSD was triggered by, *inter alia*, events at work.  Akkad told his supervisor he needed to take some time off to deal with "major issues … (physically and mentally)." (¶¶ 126-143)

- Akkad took two days off. When he returned to work on June 2, 2017, DVS fired him, with no warning and for no stated reason. (¶¶147-154).

- Sutton showed animus to other veterans with mental health disabilities and didn't want DVS to hire any more "troubled veterans." (¶¶ 164-169).

The narrative through line here is clear.  Sutton had a bias against veterans with mental health disabilities.  She knew that Akkad was a veteran with mental health disabilities.  Sutton expressed her bias openly to others and manifested it in DVS programs focusing on "strong" veterans, while disparaging "broken" veterans.  Akkad's acknowledgement to his supervisor that he needed some time off because he was having "major issues … (physically and mentally)" makes the vivid connection between Sutton's animus, and Akkad's status as a veteran with a mental health disability.  With his PTSD now visible to DVS, Akkad was now an example of the veterans Sutton disparaged as not fitting with DVS's image.  DVS saw that Akkad was a "broken" or "damaged" veteran, and fired him.

Before Akkad's PTSD manifested, DVS showcased him.  After Akkad's PTSD manifested, DVS fired him – right after Fleet Week, when DVS didn't need him anymore. While DVS knew

10

about Akkad's PTSD earlier, it makes sense, in context, that DVS would choose this moment to fire Akkad.  It was an opportune moment.  See *Velazquez-Garcia v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 20 (1st Cir. 2007) (employer cannot escape liability under USERRA for making a tactical decision to wait for an opportune moment before using a pretext to fire employee.)

Defendants ignore the evident temporal proximity between Akkad's manifestation of his PTSD and his termination. Defendants instead recycle their previous argument – that USERRA does not extend to claims of disability discrimination arising from military service – without considering the intersectional nature of plaintiff's USERRA claims.  *Holmes v. DOJ*, 498 F. App'x 993 (Fed. Cir. 2013) lacks any allegation that defendants were biased against veterans with disabilities, as plaintiff pleads here.  Plaintiff in *Holmes* was properly denied job related disability compensation because the PTSD injuries he claimed were not job related. *Cooks v. Contra Costa Cty.*, No. 20-cv-02695-PJH, 2020 U.S. Dist. LEXIS 140959 (N.D. Cal. Aug. 6, 2020) similarly lacks any allegation that defendants were biased against plaintiff because he was a veteran with a disability.  Unlike plaintiff here, Cooks did "not allege any facts connecting his uniformed service to defendant's termination order."  Akkad, by contrast, alleges that defendants were biased against "broken" and "damaged" veterans like him, and fired him for that reason. Moreover, Cooks did not frame his claim as intersectional in nature, as Akkad does here, and the court did not consider it as such.[2]

_____

[2] Defendants return to the authority cited in their motion to dismiss, which remains inapposite.  In *Soules v. Connecticut,* No. 3:14-CV-1045 (VLB), 2015 U.S. Dist. LEXIS 131985 (D. Conn. Sep. 30, 2015), the pro se plaintiff's USERRA claims were dismissed because the facts, as pleaded, did not permit a plausible inference that defendants were discriminating against him due to his military service-connected disability. Here, by marked contrast, plaintiff has pleaded ample facts demonstrating a plausible inference that defendants discriminated against him due to his military service-connected disability. *Carroll v. Del. River Port Auth.*, 89 F. Supp. 3d 628 (D.N.J. 2015) was decided on plaintiff's motion for summary judgment, not on a motion to dismiss, and, unlike Akkad, plaintiff did not assert any claims for disability discrimination.

There is more than a little irony here that these defendants – a city agency devoted to the interests of veterans, and its former Commissioner – advance the arguments that USERRA's interpretation should be construed narrowly, and not protect veterans like plaintiff.  But defendants are sadly not unique in having a bias against employing veterans with disabilities.  The EEOC recently acknowledged that "in some cases, veterans face employment policies and practices that rely on myths and stereotypes about individual with disabilities – such as concerns about employing workers with PTSD – that can prevent veterans from earning a living."[3]

### 2.  *Plaintiff's proposed amended free speech claims are not futile.*

To address the Order's concern that plaintiff alleged "no item of speech, expressed at any particular ti[m]e and place, that is connected with his termination," the PAC alleges specific items of speech, expressed at particular times and places, connected with his termination.  This includes, in particular:

- A selection of plaintiff's personal Twitter posts on current and controversial political issues in the three months before DVS fired him, and the last weeks before DVS fired him (PAC ¶¶119-120).

- An FBI investigation into plaintiff, triggered by plaintiff's political statements to a co-worker about 9/11, that was ongoing at the time DVS fired him (PAC ¶¶121-125).

- The antipathy of DVS's second in command, Jeffrey Roth, to plaintiff's political views in February/March 2017, just a few months before his termination (PAC ¶¶90-99).

Taken together with the context supplied in the rest of the PAC, the PAC plausibly alleges that defendants were hostile to plaintiff's personal political views, expressed on his personal social media and in conversations with coworkers, and support a plausible inference that Akkad's protected speech was "connected with his termination."

---

[3] https://www.eeoc.gov/laws/guidance/eeoc-efforts-veterans-disabilities (last visited 12/11/2020).

Unsurprisingly, defendants deny the connection, and want the court to draw a different inference from these allegations, but the inference to be drawn from these allegations is an issue of fact, for discovery and then for trial. For purposes of this motion, the inference must be drawn in plaintiff's favor. Indeed, as defendants' acknowledge, on a motion for leave to file an amended complaint, all plausible inferences must be drawn in favor of the plaintiff. *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 723 F. App'x 20, 21 (2d Cir. 2018)(citing *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017)).

Defendants' arguments against the PAC's free speech allegations are arguments of disputed fact and inference, not arguments of futility. After the Sutton Report and the Sutton meeting, defendants gave Akkad no direction regarding his free speech posts because Sutton had been told she could not. (PAC ¶¶77-78). But Sutton's animus did not disappear. After that, she directed Parker to report Akkad to the NYPD, for purported suspicious activities (PAC ¶79), and waited for the right moment to act on her animus. That moment came a few months later, when DVS fired Akkad.

Defendants misread the significance of Russaw's "tone down" guidance to Akkad in connection with his promotion (PAC ¶¶86-89). Defendants argue that these allegations are not protected speech, citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Connick v. Myers*, 462 U.S. (1983). But Akkad does not here allege that defendants fired him because of his union grievance. Rather, these allegations illustrate the difference between Akkad's workplace pay protest, and his personal social activism. Far from undercutting plaintiff's free speech claims, these allegations illustrate that Akkad heeded Russaw's advice about his pay protest. Akkad's free speech claim, by contrast, is not based on his workplace speech, but on his personal political views.

13

Defendants seek to diminish the significance of plaintiff's allegations concerning notification to the FBI, arising from his conversation with a co-worker about 9/11. (PAC ¶¶121-125). But these allegations assert a plausible claim for free speech retaliation: Akkad engaged in protected speech with a coworker about 9/11; Sutton learned about that speech; the FBI was notified; and the FBI was investigating Akkad, right before he was terminated. Discovery will produce additional information about defendants' actions with the FBI concerning Akkad.

Finally, defendants try to avoid the significance of the antipathy of DVS's second in command, Deputy Commissioner Jeffrey Roth, to plaintiff's personal political views. While acknowledging that these conversations are protected speech under *Garcetti*, defendants argue that the speech does not link to plaintiff's termination. But the timing alone – just a few months before Akkad was fired -- is significant, along with the fact of Roth's very senior position in the agency. These allegations strengthen Akkad's argument that his personal political views made him *persona non grata* at DVS – both to the Commissioner, and to her second in command.

### 3. Plaintiff's proposed amended disability discrimination claim is not futile.

While defendants join plaintiff in seeking clarification of the Order on this point, defendants nevertheless argue that plaintiff's disability discrimination clam is not plausible, because plaintiff has not identified appropriate comparators, and because Sutton's hostile comments were stray remarks. These arguments are meritless.

First, the PAC plausibly pleads Akkad's disability discrimination claim. Akkad was a person with a disability. DVS and Sutton knew he had a disability. Sutton expressed animus about veterans with disabilities like Akkad. DVS fired Akkad the day he returned to work after taking a few days off for his disability: his "major issues … (physically and mentally)."

14

Second, the PAC adds important additional context to Sutton's animus.  Far from a "stray remark," Sutton's animus to disabled veterans was ideological, and programmatic.  She did not want DVS to focus on "broken" or "damaged" veterans."  She wanted DVS to pursue a "strong veteran" initiative.  She wanted DVS to be known for more than helping veterans with "issues" (like Akkad and others with mental health disabilities). (PAC ¶¶ 43-49).

Third, Akkad *has* identified comparators: other DVS employees who suffered adverse employment actions because they were veterans like him with mental health disabilities, including Jamal Othman. (PAC ¶¶ 164-169).

Plaintiff plausibly alleges that he was terminated because of his PTSD disability.  He alleges that defendants knew about his disability and were hostile to "broken veterans" like him.  As discussed at greater length in plaintiff's memorandum of law in opposition to defendants' motion to dismiss, (ECF 17 at 19 and ff.), plaintiff's PAC more than meets his "de minimis burden of raising an inference of discriminatory intent" by defendants. *Abdu-Brisson v. Delta Air Lines*, 239 F. 3d 456, 468. (2nd Cir. 2001).

Defendants' arguments, taken together, amount to the disturbing conclusion that in their view, a veteran with PTSD, and who worked for the City's agency for Veterans Services, and who was fired, without warning or reason, a few days after taking leave for mental health reasons, does not state a plausible claim under either USERRA or for disability discrimination.  Plaintiff respectfully asks the court to reject defendants' disturbing conclusion and allow plaintiff's claims to proceed to discovery and to trial.

### C.  The Order is not "with prejudice."

Defendants repeatedly assert, erroneously, and without any authority, that that the Order dismissed plaintiff's USERRA and free speech claims "with prejudice."[4]  Defendants' argument is wrong, for two reasons.  First, the Order simply does not state that the dismissal is "with prejudice."  Defendants quote language that is not in the Order.  Second, defendants ignore the plain language of Rule 54(b), Fed. R. Civ. P. The grant of a motion to dismiss on some but not all grounds, unless the court directs entry of final judgment as to those grounds, is not a final order pursuant to Rule 54(b), and thus can be reconsidered before judgment.  Such an order "adjudicates fewer than all of the claims" asserted by plaintiff, and thus "does not end the action as to any of the claims or parties."  Importantly, Rule 54(b) provides that such an order "may be revised at any time before the entry of a judgment adjudicating all of the claims and the parties' rights and liabilities."  *Id*.  The Order is thus not a final order pursuant to Rule 54(b), and, accordingly, may be revised at any time before the entry of judgment.

### D.  "Law of the Case" doctrine does not preclude Amendment Pursuant to Rule 15(b).

Defendants argue that plaintiff should be denied leave to file an amended complaint because the court has already ruled on defendants' motion to dismiss.  Defendants claim that this is required by the "law of the case" doctrine.  Their argument is without merit, for two reasons. First, the court has not yet ruled on plaintiff's proposed amended pleadings.  By defendants' reading, no court could allow a plaintiff leave to amend a complaint pursuant to FRCP 15(a)(2) after granting a motion to dismiss.  This argument is contrary to the plain language of FRCP 15(a)(2) and extensive authority, and should be rejected.

---

[4] See Def. Mem. at 1, 2, FN2, 4, 7.

Second, defendants' cited authority is inapposite. *De Johnson v. Holder,* 564 F. 3d 95, 99 (2d Cir. 2002) did not consider whether plaintiff should be granted leave to file an amended pleading pursuant to FRCP(a)(2).  Moreover, as the Second Circuit noted, the doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense."  "Good sense" here mandates permitting plaintiff to file an amended complaint.

## II.
## RECONSIDERATION PURUANT TO LOCAL RULE 6.3 IS APPROPRIATE
### (clarification requested)

Plaintiff seeks clarification that the Order did not dismiss his disability discrimination claims.  The Order explicitly denied defendants' motion with respect to plaintiff's religious discrimination claim ("Defendants' motion to dismiss … based on implausible allegations of discriminatory [sic] is denied. Plaintiff alleges that the reasons for his termination were his growing identification with his faith, Islam.  His allegations are plausible.").  The Order not specifically address plaintiff's disability discrimination claim.

Defendants also seek clarification on this issue. (Def. Mem. at 2, FN1) but nevertheless ask the court to deny reconsideration, because plaintiff's motion does not meet the standards of Rule 59(e) or Rule 60(b), Fed. R. Civ. P.  Defendants arguments are without merit.

Local Rule 6.3 permits a motion for reconsideration to address "matters …which counsel believes the Court has overlooked."  Defendants agree with plaintiff that the Court overlooked consideration of plaintiff's disability discrimination claim. Accordingly, plaintiff's motion is appropriate, and reconsideration should be granted.  And, for the reasons set forth above, and in plaintiff's previous submissions, defendants' motion to dismiss plaintiff's disability discrimination claim should be denied.

The Order also did not address leave for plaintiff to file an amended complaint.  For the reasons set forth at Point I herein, this also is a "matter … which counsel believes the Court has overlooked."  Accordingly, plaintiff asks for leave to file an amended complaint.

## CONCLUSION

Plaintiff's PAC sets forth substantial plausible allegations that defendants fired him because he is a veteran with mental health disability, and because of his protected speech.  For the foregoing reasons, plaintiff respectfully requests that the Court to reconsider the October 19, 2020 Order, grant plaintiff leave to file the Proposed Amended Complaint, and clarify that plaintiff's disability discrimination claim is not dismissed and will proceed to discovery.

Dated:       New York, New York
             December 14, 2020

LAW OFFICES OF DEBORAH H. KARPATKIN
Attorney for Plaintiff Achmat Akkad
99 Park Avenue, Suite 2600
New York, NY 10016
(646) 865-9930
deborah.karpatkin@karpatkinlaw.com


By: _____
        Deborah H. Karpatkin

18